IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IPA TECHNOLOGIES INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-01 (RGA) (SRF) |
| | ) | |
| MICROSOFT CORPORATION, | ) | REDACTED - PUBLIC VERSION |
| | ) | |
| Defendant. | ) | |

**MICROSOFT CORPORATION'S OPENING BRIEF
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
AND TO EXCLUDE IPA TECHNOLOGIES INC.'S EXPERT OPINIONS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
rsmith@morrisnichols.com

*Attorneys for Defendant Microsoft Corporation*

OF COUNSEL:

Joseph A. Micallef
Matthew Mahoney
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
(202) 736-8000

Richard A. Cederoth
Nathaniel C. Love
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Original filing date: November 22, 2023
Redacted filing date: November 29, 2023

## TABLE OF CONTENTS

Page

I.  INTRODUCTION ........................................................................................................ 1

II.  LEGAL STANDARD ................................................................................................. 2

    A.  Summary Judgment .......................................................................................... 2

    B.  Infringement ...................................................................................................... 2

    C.  Rule 702 ............................................................................................................ 2

III.  STATEMENT OF FACTS ......................................................................................... 3

    A.  The Asserted Patents ......................................................................................... 3

    B.  The Accused Systems ....................................................................................... 4

IV.  ARGUMENT .............................................................................................................. 7

    A.  IPA's Direct Infringement Allegations Against Windows 10 and Other Client Devices Fail Under Rule 26 and Rule 702 and as a Matter of Law ...................... 7

    B.  The Accused ███████████ Does Not Infringe ......................................... 9

        1.  Cortana's Service Request Is Not Recited in the Claimed ICL ................ 9

        2.  IPA Has No Evidence To Prove That the Accused Cortana ████████ Could Employ a Compound, Arbitrarily Complex Base Goal ............... 17

        3.  IPA Has Presented No Evidence the Accused ███████ s Schedule Based on Reasoning ................................................................................ 20

    C.  IPA Has Not Met Its Burden Of Proving Any Amount Of Damages .................. 23

        1.  Background ............................................................................................. 23

        2.  No Windows 10 Direct Infringement Proof or Apportionment .............. 25

        3.  IPA's Damages Case Relies on Inherently Unreliable Survey and Simulation Adjustment Evidence .......................................................... 28

        4.  Dr. Reed-Arthurs' Survey is Fatally Flawed ......................................... 30

    D.  IPA Is Not Entitled to Pre-Suit Damages Because of a Failure to Mark ............. 31

E.    IPA's Doctrine of Equivalents Allegations Fail Under Rule 702 and as a Matter of Law ................................................................................................................. 32

F.    IPA's Induced Infringement Allegations Fail Under Rule 702 and as a Matter of Law ................................................................................................................. 35

G.    IPA's Contributory Infringement Allegations Fail Under Rule 702 and as a Matter of Law ................................................................................................................. 37

H.    IPA Lacks Evidence To Prove Willfulness ........................................................ 39

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Akamai Techs., Inc. v. Limelight Networks,*
    797 F.3d 1020 (Fed. Cir. 2015) ........................................................................... 7

*Ampex Corp. v. Eastman Kodak Co.,*
    460 F. Supp. 2d 563 (D. Del. 2006) .................................................................... 35

*Apple Inc. v. Wi-LAN Inc.,*
    25 F.4th 960 (Fed. Cir. 2022) ............................................................................... 3

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.,*
    876 F.3d 1350 (Fed. Cir. 2017) ..................................................................... 31, 32

*Aro Mfg. Co., Inc. v. Convertible Top Co.,*
    377 U.S. 476 (1964) ...................................................................................... 25, 39

*AVM Techs., LLC v. Intel Corp.,*
    C. A. No. 10-610-RGA, 2013 WL 126233 (D. Del. Jan. 4, 2013) ......................... 3

*Builders Concrete, Inc. v. Bremerton Concrete Prods. Co.,*
    757 F.2d 255 (Fed. Cir. 1985) ............................................................................ 34

*Burleson v. Tex. Dep't. Crim. Justice,*
    393 F.3d 577 (5th Cir. 2004) .............................................................................. 29

*Callwave Commc'ns LLC v. AT & T Mobility LLC,*
    C.A. No. 12-1701-RGA, 2014 WL 5363741 (D. Del. Jan. 28, 2014) .................. 40

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ............................................................................................. 2

*Chiron Corp. v. Genentech, Inc.,*
    363 F.3d 1247 (Fed. Cir. 2004) ..................................................................... 33, 36

*CiRBA Inc. v. VMware, Inc.,*
    C.A. No. 19-742-GBW, 2023 WL 3151854 (D. Del. Apr. 24, 2023) .................... 8

*Clare v. Chrysler Grp. LLC,*
    819 F.3d 1323 (Fed. Cir. 2016) .......................................................................... 18

*Contour IP Holding LLC v. GoPro, Inc,*
    No. 3:17-cv-04738-WHO, 2021 WL 75666 (N.D. Cal. Jan. 8, 2021) ................. 30

*DeMarini Sports, Inc. v. Worth, Inc.*,
  239 F.3d 1314 (Fed. Cir. 2001)................................................................................................. 2

*DermaFocus LLC v. Ulthera, Inc.*,
  201 F. Supp. 3d 465 (D. Del. 2016)....................................................................................... 36

*Droplets, Inc. v. Yahoo! Inc.*,
  No. 12-cv-03733-JST, 2021 WL 9038355 (N.D. Cal. Aug. 9, 2021)................................... 30

*Enplas Display Device Corp. v. Seoul Semiconductor Co. Ltd.*,
  909 F.3d 398 (Fed. Cir. 2018)................................................................................................ 25

*Enviro-tech Corp. v. Al George, Inc.*,
  730 F.2d 753 (Fed. Cir. 1984)................................................................................................... 2

*Ericsson, Inc. v. D-Link Sys., Inc.*,
  773 F.3d 1201 (Fed. Cir. 2014)............................................................................................... 27

*Evonik Degussa GmbH v. Materia, Inc.*,
  305 F. Supp. 3d 563 (D. Del. 2018)....................................................................................... 40

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
  575 F.3d 1312 (Fed. Cir. 2009)............................................................................................... 18

*Exigent Tech., Inc. v. Atrana Sols., Inc*.,
  442 F.3d 1301 (Fed. Cir. 2006)................................................................................................. 2

*Global-Tech Appliances, Inc. v. SEB SA*,
  131 S. Ct. 2060 (2011)...................................................................................................... 36, 37

*Guillory v. Domtar Indus. Inc.*,
  95 F.3d 1320 (5th Cir. 1996) .................................................................................................. 29

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  163 S. Ct. 1923 (2016)............................................................................................................ 39

*iFIT, Inc. v. Peloton Interactive, Inc.*,
  C.A. No. 21-507-RGA, 2022 WL 609605 (D. Del. Jan. 28, 2022) ....................................... 40

*Karlo v. Pittsburgh Glass Works, LLC*,
  849 F.3d 61 (3d Cir. 2017)........................................................................................................ 3

*Knight v. Kirby Inland Marine Inc.*,
  482 F.3d 347 (5th Cir. 2007) .................................................................................................. 30

*Limelight Networks v. Akamai Techs.*,
  134 S. Ct. 2111 (2014)............................................................................................................ 36

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009)..................................................................................28

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)........................................................................................................2

*Mfg. Res. Int'l, Inc. v. Civiq Smartscapes, LLC*,
  C.A. No. 17-269-RGA, 2019 WL 4198194 (D. Del. Sep. 4, 2019) .....................................9

*Network Com., Inc. v. Microsoft Corp.*,
  422 F.3d 1353 (Fed. Cir. 2005)..................................................................................33

*Nike, Inc. v. Wal-Mart Stores, Inc.*,
  138 F.3d 1437 (Fed. Cir. 1998)..................................................................................32

*Nuance Comm'ns Inc. v. Tellme Networks Inc.*,
  707 F. Supp. 2d 472 (2010) .......................................................................................38

*O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co.*,
  521 F.3d 1351 (Fed. Cir. 2008)..................................................................................15

*Optivus Tech., Inc. v. Ion Beam Applications S.A.*,
  469 F.3d 978 (Fed. Cir. 2006)......................................................................................2

*Osteotech, Inc. v. Regeneration Techs., Inc.*,
  C.A. No. 3:06-cv-04249-FLW, 2008 WL 4449564, (D.N.J. Sep. 25, 2008)........................32

*Parallel Networks Licensing, LLC v. IBM*,
  C.A. No. 13-2070-KAJ, 2017 WL 1405155 (D. Del. Apr. 17, 2017) ...............................26

*Pellegrini v. Analog Devices, Inc.*,
  375 F.3d 1113 (Fed. Cir. 2004)..................................................................................39

*PharmaStem Therapeutics, Inc. v. Viacell, Inc.*
  491 F.3d 1342 (Fed. Cir. 2007)..................................................................................38

*Robert Bosch LLC v. Alberee Prod., Inc.*,
  C.A. No. 12-574-LPS, 2015 WL 5576746 (D. Del. Sept. 16, 2015)...................................32

*SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*,
  859 F.2d 878 (Fed. Cir. 1988)......................................................................................9

*TecSec, Inc. v. Adobe Inc.*,
  978 F.3d 1278 (Fed. Cir. 2020)............................................................................23, 26

*In re TMI Litig.*,
  193 F.3d 613 (3d Cir. 1999), *amended*, 199 F.3d 158 (3d. Cir. 2000) ...................................3

*TQ Delta, LLC v. Adtran, Inc.*,
   C.A. No. 14-954-RGA, 2021 WL 1200594 (D. Del. Mar. 30, 2021)..................................23

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011)........................................................................................26

*Via Vadis, LLC v. Amazon.com, Inc.*,
   No. 1:14-CV-00813-LY, 2022 WL 23351 (W.D. Tex. Jan. 3, 2022)...........................27, 28

*Virnetx, Inc. v. Cisco Sys., Inc.*,
   767 F.3d 1308 (Fed. Cir. 2014)........................................................................................26

*Zimmer Surgical, Inc. v. Stryker Corp.*,
   365 F. Supp. 3d 466 (D. Del. 2019)..................................................................................40

**Statutes**

35 U.S.C. §271(c) ...............................................................................................................37

35 U.S.C. § 284 ..................................................................................................................25

35 U.S.C. § 287(a) ..............................................................................................................32

**Other Authorities**

Fed. R. Civ. P. 56................................................................................................................2

Fed. R. Civ. P. 26(a)(2)(B)(i) .............................................................................................8

Fed. R. Evid. 702 .............................................................................................................2, 3

# I.    INTRODUCTION

The patents asserted in this case disclose a "software-based architecture" for cooperation among distributed electronic agents that communicate with each other using a highly specialized "interagent communication language," or "ICL."  Plaintiff IPA Technologies Inc. ("IPA") asserts that some of Defendant Microsoft Corporation's ("Microsoft") Cortana functionality infringes the now-expired patents and reads the asserted claims entirely on two versions of Microsoft software ████████████████████████████ Despite accusing ███████████████ as the infringement, IPA and its technical expert, Dr. Medvidovic, baldly state that ████████████ ████████████ Windows 10 operating system are "accused products" and IPA's damages experts advance a theory of damages based on the technical expert's assertion that Windows 10 directly infringes the asserted claims.

Dr. Medvidovic, however, does not read *any* element of *any* asserted claim on Windows 10, and no Windows 10 code is even cited in his reports.  *See* Mahoney Decl. Ex. G (Medvidovic 11/15 Depo.) at 17:4-6 ████████████████████████████████ ████████.  Of course, Windows 10 can therefore not directly infringe, and IPA's damages model fails as a matter of law.  Moreover, the infringement analysis Dr. Medvidovic does include in his reports – attempting to read the claims ███████████████████████ – also fails. That is because every asserted claim requires a "service request" that, according to this Court's claim interpretation, "must be recited in the claimed ICL."  D.I. 143 at 4.  The undisputed evidence establishes, however, that Cortana's service request is not in the claimed ICL, but remains in the language of the user, *e.g.* English.  Accordingly, for these reasons and others set forth below, the Court should exclude several expert opinions that violate the principles set forth in Fed. R. Evid. 702 and enter summary judgment of no infringement.

## II.    LEGAL STANDARD

### A.    Summary Judgment

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  A party opposing a motion for summary judgment on a claim for which it carries the burden of proof must present evidence sufficient to prove each element of that claim to avoid summary judgment.  *Id.* at 322-23.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B.    Infringement

Literal infringement occurs only "when every limitation recited in the claim appears in the accused device, *i.e.*, when 'the properly construed claim reads on the accused device exactly.'" *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1331 (Fed. Cir. 2001).  The patentee bears the burden to prove infringement by a preponderance of the evidence.  *Enviro-tech Corp. v. AI George, Inc.*, 730 F.2d 753, 758 (Fed. Cir. 1984).  A defendant seeking summary judgment need only point to ways in which the accused products fail to meet the claim.  *Exigent Tech., Inc. v. Atrana Sols., Inc*., 442 F.3d 1301, 1308-09 (Fed. Cir. 2006).  The burden of proof then shifts to the plaintiff to "identify genuine issues that preclude summary judgment."  *Optivus Tech., Inc. v. Ion Beam Applications S.A*., 469 F.3d 978, 990 (Fed. Cir. 2006).

### C.    Rule 702

Expert opinion testimony is admissible under Federal Rule of Evidence 702 only "if the proponent demonstrates to the court that it is more likely than not that" it: (a) will help the trier of fact understand the evidence or determine a fact in issue; (b) is "based on sufficient facts or data"; (c) is "the product of reliable principles and methods"; and (d) "reflects a reliable application of

the principles and methods to the facts of the case." Fed. R. Evid. 702. The proponent bears the burden of proving the testimony is both admissible and reliable. *Id.* (advisory committee notes to 2000 amendment); *see also Karlo v. Pittsburgh Glass Works, LLC,* 849 F.3d 61, 80-81 (3d Cir. 2017).

To be reliable, the testimony must be grounded in the "methods and procedures of science.'" *In re TMI Litig.*, 193 F.3d 613, 670 (3d Cir. 1999), *amended*, 199 F.3d 158 (3d Cir. 2000). "[A]ny step that renders the analysis unreliable … renders the expert's testimony inadmissible." *AVM Techs., LLC v. Intel Corp.,* C.A. No. 10-610-RGA, 2013 WL 126233, at *1 (D. Del. Jan. 4, 2013) (cleaned up) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994)). Reliable testimony must be based on more than "subjective belief or unsupported speculation." *In re TMI Litig.*, 193 F.3d at 670. A valid methodology "is nonetheless unreliable where the data used is not sufficiently tied to the facts of the case." *Apple Inc. v. Wi-LAN Inc*., 25 F.4th 960, 971 (Fed. Cir. 2022). Conversely, "ideal input data cannot save a methodology that is plagued by logical deficiencies or is otherwise unreasonable." *Id*.

## III.    STATEMENT OF FACTS

### A.    <u>The Asserted Patents</u>

IPA asserts two patents in this case—U.S. Patent No. 6,851,115 ("the 115 Patent") and U.S. Patent No. 7,069,560 ("the 560 Patent"). D.I. 16 at 1.[1] The patents both relate to a system and method for collective task completion among distributed software agents and share the same specification. *See, e.g.*, Mahoney Decl. Ex. A (115 Patent) at Abstract. The disclosed system employs an ICL to provide a common communication protocol between electronic agents. *See, e.g.*, *id.* at 1:24-33. For example, a user's spoken request, such as "Fax it to Bill Smith's manager,"

---

[1]    These same two patents were previously asserted by IPA in this Court against Amazon.com, in which case the Court granted summary judgment of noninfringement. *See IPA Technologies, Inc. v. Amazon.com,* C.A. No. 16-1266-RGA, D.I. 405 (Oct. 28, 2021).

is translated into the ICL, such as "oaa_Solve((manager('Bill Smith', M), fax(it,M,[ ])), [strategy(action)])." *Id.* at 15:29-33 ("As a simple example, the spoken utterance 'Fax it to Bill Smith's manager.' can be translated into the following compound ICL request: oaa_Solve((manager('Bill Smith', M), fax(it,M,[ ])), [strategy(action)]).").

The translated request is sent to a Facilitator Agent, which determines a "base goal" from the request and constructs a goal satisfaction plan consisting of multiple sub-goals required in completing the base goal. *Id.* at 18:33-41. The Facilitator Agent selects an agent suitable for each sub-goal and delegates each sub-goal to the selected agent accordingly. *Id.* at 18:38-41 ("The facilitator then transmits the sub-goal request to the selected agents in a step 1112 and receives the results of these transmitted request in a step 1114.").[2]

B.    The Accused Systems

IPA accuses ███████████████████████ – ███████████████████████  ███████████████████ ("the Accused Systems") – allegedly used in providing some of Microsoft's Cortana functionality ██████████████ until the asserted patents expired on January 5, 2019.[3] It is undisputed that ████████████████████████████ ██████████████. Mahoney Decl. Ex. D (Albrecht Depo.) at 41:8-18, 45:3-46:8, 47:16-19, 83:19-84:1, 136:16-137-10, 190:12-191:10; Mahoney Decl. Ex. H (Medvidovic Opening) ¶86 ████████████████████████████████████████████████████████████

_____

[2]    IPA asserts independent claim 29 of the 115 Patent and its dependent claims 33, 38, 41, and 43. Mahoney Decl. Ex. H (Medvidovic Opening) ¶50. These claims are drawn to a "computer program comprising computer executable instructions for" performing various functions. Mahoney Decl. Ex. A (115 Patent) at 31:48-32:23. IPA also asserts independent claims 50 and 53 and dependent claim 54 of the 560 Patent. Mahoney Decl. Ex. H (Medvidovic Opening) ¶50. Those claims are drawn to "computer-implemented method[s] for providing cooperative task completion within a distributed computing environment." Mahoney Decl. Ex. B (560 Patent) at 34:47-49, 36:1-3.

[3]    Microsoft disputes the alleged time period, but that dispute is not material to this motion.

██████████████ IPA's accusations are further limited to the interaction of these ███████████ with what are called "first-party skills," which are referred to below as "Skills" for clarity. Mahoney Decl. Ex. N (IPA Contentions) at Ex. A Chart at 3; Mahoney Decl. Ex. H (Medvidovic Opening) ¶92, n.34. IPA contends these Skills constitute the "service providing agents" of the claims.[4]

The general functionality of the █████████████ is undisputed. Mahoney Decl. Ex. I (Medvidovic Reply) ¶170. In the ████████████, for example, a user's spoken request is sent by a client device (*e.g.*, a phone) to ████████████████████ as an audio file and converted ████████████████ to a string of text in the language spoken by the user (*e.g.*, English) and stored as a text string ██████████████ Maly Decl. Ex. A ¶¶37-40, 70-72; Lieberman Decl. Ex. A ¶¶96-99. ████████ therefore stores the actual words spoken by the user when she made a request of Cortana. Maly Decl. Ex. A ¶39 ████████████████ ██████████████████; Mahoney Decl. Ex. I (Medvidovic Reply) ¶170 (agreeing with Maly's description of ████████).

████████████████████████████
████████████████████████████
████████████████    ████████████████
████████████████████████ Maly Decl. Ex. A ¶42.

---

[4]    A "first-party skill" is "functionality built by developers that work for Microsoft." Mahoney Decl. Ex. J (Taranov Depo.) at 22:4-6. They consist of code that is ████████████████ ████████████████████████████ and capable of carrying out certain specific tasks. Mahoney Decl. Ex. D (Albrecht Depo.) at 68:10-69:18. There are, however, other unaccused types of Skills that operate with Cortana, ████████████████████████. *See* Mahoney Decl. Ex. J (Taranov Depo.) at 93:10-94:19.

██████████████████████████████████████████████

██████████████████████████████████████. Maly Decl. Ex. A ¶43.

A ████████ is a "potential understanding," or guess, at the meaning of the user's request.

*Id.* ████████████████████████████████████████████

████ Mahoney Decl. Ex. J (Taranov Depo.) at 57:11-59:25.[5]

Next, Cortex initiates a process called ███████████ that seeks to identify Skills that might be able to respond to the user request ████████████ by comparing the ███████ ██████████████ for each Skill ████████████. Maly Decl. Ex. A ¶45. The ██████ includes information about the Skill, ███████████████████ the Skill may be able to respond to in some manner. *Id.*

████████████████████████████████████████████

████████████████████████████████████████████

████ Maly Decl. Ex. A ¶46. ████████████████████████████

████████████████████████████████████████████

████████████ *Id.* ¶47. ████████████████████████████

████████████████████████████████████████. ████

████████████████████████████████████████████

████████████████████████████████████████████

████████ Maly Decl. Ex. A ¶53.[6]

---

[5] ████████████████████████████████████████
██████████████████████████████████ Maly Decl. Ex. A ¶44.

[6] ████████████████████████████████████████
████████████████████████████████████████████
████ Mahoney Decl. Ex. H (Medvidovic Opening) ¶382; Maly Decl. Ex. A ¶58. Substantially

## IV.    ARGUMENT

### A.    IPA's Direct Infringement Allegations Against Windows 10 and Other Client Devices Fail Under Rule 26 and Rule 702 and as a Matter of Law

IPA's technical expert, Dr. Medvidovic, asserts "that all devices that were able to access Cortana starting from its launch in 2014 to the expiration date of the asserted patents (January 5, 2019) (the 'Cortana-Enabled Products') are the accused products in this lawsuit."  Mahoney Decl. Ex. H (Medvidovic Opening) ¶60.  He opines that there are multiple client devices capable of interfacing with ███████████████ Cortana system, including "the Windows Phone 8.1; products running the Windows 10 operating system (including desktops, laptops, and tablets); various models of the Microsoft Surface … various models of the Microsoft Xbox … various models of Microsoft-owned Nokia phones; … Microsoft's Hololens devices," and the INVOKE speaker made by third party Harmon Kardon.  *Id.* ¶¶61-62. And he asserts that Microsoft directly infringes by making, using, selling, and or offering for sale products or devices "that provide[] an interface for a user to access Cortana."  *Id.* ¶75.  Dr. Medvidovic therefore asserts that Microsoft ***directly*** infringes by providing Windows-based computers and other client devices that act as an interface to access Cortana.

Such a theory of direct infringement would require a showing that each accused client device satisfies every element of at least one asserted claim.  *Akamai Technologies, Inc. v. Limelight Networks*, 797 F.3d 1020, 1022 (Fed. Cir. 2015).  But IPA's expert does not read ***any*** element of ***any*** asserted claim on any type of client device.  Rather, the expert's analysis reads the claims solely on ███████████████████████████████████.  *See* Mahoney Decl. Ex. G (Medvidovic 11/15 Depo.) at 17:4-6 ████████████████████

_____

███████████████████████████████████████████████████
███████████████████████████████████████████████████
██ Maly Decl. Ex. A ¶¶55-66.

████████████████████████████████████████████[7]; Mahoney Decl. Ex. H

(Medvidovic Opening) ¶¶86-87 ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████; Maly Decl. Ex. A ¶37, n.1 ████████████

████████████████████████████████████████████████████

███████████████████████████████████████

An expert is required to include in his report "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Dr. Medvidovic's report includes no statement that any client device he identifies practices each element of any asserted claim or any analysis setting forth the basis and reasons that might support such an opinion. His opinions of direct infringement by the Windows-based and other client devices should therefore be excluded. *CiRBA Inc. v. VMware, Inc.*, C.A. No. 19-742-GBW, 2023 WL 3151854, at *8 (D. Del. Apr. 24, 2023).

Similarly, Fed. R. Evid. 702 permits an expert to present opinion testimony to the trier of fact, but only if "(b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the opinion reflects a reliable application of the principles and methods to the facts of the case." As noted above, a direct infringement analysis requires proof that a device practices each element of the asserted claim. Because Dr. Medvidovic has not provided any such analysis as to any client devices, his opinions as to direct infringement by client devices is not based on sufficient facts or data or the product of reliable principles and methods, and he has failed to reliably apply such principles and methods. Such opinions should

---

[7]    In this brief, emphasis has been added unless otherwise indicated.

be excluded for this reason as well. *Mfg. Res. Int'l, Inc. v. Civiq Smartscapes, LLC*, C.A. No. 17-269-RGA, 2019 WL 4198194, at *7 (D. Del. Sept. 4, 2019).

Finally, IPA bears the burden of proof on issues of infringement. *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988). Given the inadequacies of Dr. Medvidovic's opinions as to direct infringement by client devices, IPA has no evidence that any client device practices each element of any asserted claim. IPA therefore lacks evidence to show that Microsoft directly infringes by making, using, selling, and or offering for sale products or devices "that provide an interface for a user to access Cortana," such as the accused client devices. The Court should therefore enter summary judgment of no such direct infringement.

    B.    <u>The Accused ██████████ Does Not Infringe</u>

        1.    <u>Cortana's Service Request Is Not Recited in the Claimed ICL</u>

All asserted claims require a "service request adhering to an Interagent Communication Language (ICL)." Mahoney Decl. Ex. A (115 Patent) at 31:48-32:23; Mahoney Decl. Ex. B (560 Patent) at 34:46-35:10, 36:1-27. For this functionality, the patents provide an example of a user asking the system, verbally, to "Fax it to Bill Smith's manager":

> As a simple example, the spoken utterance "Fax it to Bill Smith's manager." can be translated into the following compound ICL request: oaa_Solve((manager('Bill Smith', M), fax(it,M,[ ])), [strategy(action)]).

Mahoney Decl. Ex. A (115 Patent) at 15:29-34; Mahoney Decl. Ex. B (560 Patent) at 15:29-34. Here, the user's utterance "Fax it to Bill Smith's manager" is translated into the ICL representation of the user's request: "oaa_Solve((manager('Bill Smith', M), fax(it,M,[ ])), [strategy( action)])." Lieberman Decl. Ex. A ¶¶177-178.

Based on this and other disclosures, in its Claim Construction Order, the Court ruled that the service request "must be recited in the claimed ICL and must meet every requirement of the

claimed ICL." D.I. 143 at 4.  There is, however, no genuine dispute that the "service requests" in

the accused ▮▮▮▮▮ are not "recited in the claimed ICL," for several reasons.

           a.     IPA Has No Evidence That the Accused Service Requests Are Recited in the Claimed ICL

There is no genuine dispute that the "service requests" of the Accused Systems are not

"recited in the claimed ICL," first, because IPA's expert has not applied that portion of the Court's

interpretation to the alleged "service requests" that he accuses.

For example,  Mahoney Decl. Ex. H (Medvidovic Opening) ¶381(g) & n. 417.[8]  For

the accused ▮▮▮▮▮▮, IPA's expert accuses ▮▮▮▮▮▮ as sat-

isfying the claimed "service request."  *Id.* ¶126.  But while Dr. Medvidovic asserts a theory as

to why ▮▮▮▮▮ satisfy what he believes are the requirements of the

claimed ICL, he never opines that either is "recited in the claimed ICL."

More specifically, Dr. Medvidovic's comparison of the Court's claim interpretation in this

respect to ▮▮▮▮▮ appears at paragraphs 169-173 of his Opening Report.  *See id.*

¶¶169-173.  In paragraph 169, Dr. Medvidovic restates the Court's claim construction and asserts

that the requirements of the claimed ICL "are the layer of conversational protocol and the content

layer."  In paragraphs 170-172, he explains his theory as to why ▮▮▮▮▮ satisfies the "layer

of conversational protocol" requirement of the claimed ICL, and in paragraph 173 he explains his

theory as to ▮▮▮▮▮ satisfies the content layer requirement of the ICL.  *See id.*  But

---

[8]     For this proposition, ▮▮▮▮▮
▮▮▮▮▮.  *See* Mahoney Decl. Ex. H (Medvidovic Opening)
¶¶381(g), n. 417.  That code represents ▮▮▮▮▮

in none of these paragraphs, or anywhere else in his reports, does he ever assert or explain how the ████████ is "recited in the claimed ICL."[9]

Similarly, Dr. Medvidovic's comparison of this claim interpretation ████████████ ████ appears at paragraphs 446-450 of his Opening Report. *See* Mahoney Decl. Ex. H (Medvidovic Opening) ¶¶446-450. In paragraph 446, Dr. Medvidovic again restates the Court's claim construction and asserts that the requirements of the claimed ICL "are the layer of conversational protocol and the content layer." In paragraphs 447-449, he explains his theory as to why ████ ████████ satisfies the "layer of conversational protocol" requirement of the claimed ICL, and in paragraph 450 he explains his theory as to why ████████ satisfies the content layer requirement of the ICL. *See id*. Again, in none of these paragraphs, or anywhere else in his reports, does Dr. Medvidovic ever assert or explain how ████████ is "recited in the claimed ICL."[10]

IPA therefore has no evidence upon which a jury could find that the accused "service requests" in either ████████ satisfies the Court's claim interpretation because Dr. Medvidovic never analyzes the "recited in the claimed ICL" portion of that interpretation. Summary judgment of no-infringement as to every asserted claim should be granted on this basis alone.

---

[9]    These paragraphs 169-173 address Dr. Medvidovic's comparison of independent claim 29 of the 115 Patent ████████████. The "service request" claim language also appears in the asserted independent claims of the 560 Patent. *See, e.g.*, Mahoney Decl. Ex. B (560 Patent) at 34:46-35:10, 36:1-27. Dr. Medvidovic's analysis of the service request language in those claims merely cites back to his analysis of the 115 Patent. *See* Mahoney Decl. Ex. H (Medvidovic Opening) ¶¶320, 342.

[10]    Paragraphs 446-450 address Dr. Medvidovic's comparison of independent claim 29 of the 115 Patent ████████████. For that ████████, his analysis of the service request language in the claims of the 560 Patent again merely cites back to his analysis of the 115 Patent. *See* Mahoney Decl. Ex. H (Medvidovic Opening) ¶595 and ¶616.

        b.      **No Reasonable Juror Could Find That the Service Requests of the Accused Systems Are Recited in the Claimed ICL**

There is also no genuine dispute that the "service requests" of the Accused Systems – *i.e.*, what the user requested of the system – are not "recited in the claimed ICL [*i.e.*, interagent communication language]," but are instead recited in the user's own words and natural language, *e.g.*, English.



For example, as demonstrated above, ███████████████████████████ ███████████████████████ Mahoney Decl. Ex. H (Medvidovic Opening) ¶381(g) & n. 417 ██████████████████). It is undisputed, however, that ████████ he cites includes a data structure ██████████████ that include a "text string reflecting the user's utterance." Maly Decl. Ex. A ¶58.[11] Dr. Medvidovic does not dispute this fact. Mahoney Decl. Ex. I (Medvidovic Reply) ¶171 ("I also generally agree with Mr. Maly's description █████████████████████████

Similarly, Dr. Medvidovic accuses █████████████ used in ████████ ████████ as satisfying the "service request" requirements of the claims. Mahoney Decl. Ex. H (Medvidovic Opening) ¶128. It is undisputed that ███████████ includes the same ████ ████████ structure holding "the text version of the user's spoken request." Maly Decl. Ex. A ¶¶39-40. Dr. Medvidovic does not dispute this fact either. Mahoney Decl. Ex. I (Medvidovic Reply) ¶170 ("I generally agree with Mr. Maly's description ███████████████████ ████████).

_____

11   "█████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████

Moreover, it is undisputed that ███████████ data structure holds the "the text version of the user's spoken request" in a text string ████████████ that contains the actual words the user spoke:

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

Maly Decl. Ex. A ¶39, *see also id*. ¶¶70-72. Dr. Medvidovic does not dispute this fact either. Mahoney Decl. Ex. I (Medvidovic Reply) ¶170 (agreeing with Maly ¶39).

Thus, for both ███████████ there is no genuine dispute that the "service request" – *i.e.*, what the user requested of Cortana – is the content of ███████████ text string, and that text string contains the actual words the user spoke. There is, therefore, no genuine dispute that the "service requests" of the Accused Systems are not recited in the claimed ICL, but are instead recited in the language of the user, *e.g.*, English.

IPA may argue that it accuses ████████████████████ as the claimed "service request" and that the analysis must focus on those structures. But no reasonable juror could find on this record that those structures, and not ███████████, is a "service request" as claimed. For example, there is no evidence in the record that anything other than ███████████ represents what the user requested of the system. It is also undisputed that the additional parameters included in ███████████████████ do not represent what the user asked of the system, but instead contain various control parameters that might be used by the system in responding to the user's request. Mahoney Decl. Ex. F (Maly Depo.) at 86:19-96:11; Lieberman Decl. Ex. A ¶183. Indeed, Microsoft's source code expert, Mr. Maly, explained that the ███████████████████████████████████████████████████████████████████████████████



. No reasonable jury could find that such internal control parameters, utterly unknown and unknowable to the user, could constitute a "service request" as claimed, and IPA has no evidence to suggest otherwise.

Indeed, it appears that with this analysis Dr. Medvidovic is attempting the same end-run around the claims this Court refused to allow in IPA's case against Amazon. There, ███ ███ that represented the user's utterance did not adhere to all the requirements of the claimed ICL, so he accused the "combination" of ████████████ – which did not represent the user's utterance – as satisfying the claimed "service request." *IPA Technologies, Inc. v. Amazon.com,* Case No. 16-1266-RGA, D.I. 405 (Oct. 28, 2021) at 4. This Court rejected that approach as a matter of law, holding that the "service request adheres to the ICL" claim language "shows that the service request must be recited in the claimed ICL and must meet every requirement of the claimed ICL." *Id.*

Here, Dr. Medvidovic takes that same misguided approach that was rejected in the Amazon case. The ██████ represents the user's utterance but is not recited in the claimed ICL and does not satisfy the requirements of the ICL, so he accuses the "combination" of ████ with the other parameters ██████████ – which do not represent the user's utterance. The Court should reject this approach again and for the same reasons – ***it is the service request <u>itself</u>***, *i.e.*, what the user asked of the system, that under the Court's interpretation "must be recited in the claimed ICL and must meet every requirement of the claimed ICL."

Accordingly, there is no genuine dispute that ███████████, what the user requests of the system – *i.e.*, the "service request" – is contained in the ████████, and that string is not recited in any ICL but is instead recited in the language used by the user, *e.g.*, English. The Court should grant summary judgment of no infringement of all asserted claims on this basis.

          c.      The Service Request of the Accused Systems Is the RawQuery Text String

To the extent IPA contends that the claimed "service request" can be something other than what the user requests of the system, that contention would represent a fundamental disagreement as to the scope of the claim.  In that case, the Court should construe "service request" to mean what the user requests of the system and reject IPA's arguments as a matter of law.  *O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it.").

There is no doubt that in the asserted patents the claimed "service request" is what the user requests of the system.  The claims themselves use the phrases "service request" and "request for service" interchangeably, *see*, *e.g.*, Mahoney Decl. Ex. A (115 Patent) at 31:48-32:23; Mahoney Decl. Ex. B (560 Patent) at 34:46-35:10, 36:1-27, and the Court has construed them together, *see* D.I. 143 at 4.  Moreover, in the only specification example relevant to the "service request adhering to the ICL" claim language, the specification explains that it is the utterance of the user that gets translated to, and therefore adheres to, the ICL: "***the spoken utterance*** 'Fax it to Bill Smith's manager.' ***can be translated into the following compound ICL request***: oaa_Solve((manager('Bill Smith', M), fax(it,M,[ ])), [strategy(action)])."  Mahoney Decl. Ex. A (115 Patent) at 15:29-34; Mahoney Decl. Ex. B (560 Patent) at 15:29-34.  This is consistent with the file history in which the applicants cited two exemplary "requests" during the course of their arguments to the Examiner, the first being "Make Coffee" and the second being "Remind Bob about lunch."  *See*, *e.g.*,

Mahoney Decl. Ex. C at IPA-00082884-885. Obviously, those requests represent words spoken by a user requesting a service of the system, and not some internal control parameters that might be used in the processing of those requests.

Moreover, in IPA's case against Amazon, this Court noted that Dr. Medvidovic's infringement analysis against Amazon asserted that ██████████ in the Amazon system was the claimed "service request" precisely because it represented the user's utterance: "Dr. Medvidovic contends ██████ **represents the user's utterance <u>and thus is the claimed service request.</u>**" *See IPA Technologies, Inc. v. Amazon.com,* Case No. 16-1266-RGA, D.I. 405 (Oct. 28, 2021) at 4. Dr. Medvidovic has confirmed this view in this case:

> I don't think that there's any dispute that ***service request, which is something that a human asks of Cortana*** … but ***certainly something that a human requests of Cortana***, if we agree that that's a service request, Cortana handles that through an ██████. … ***I do not believe that this is unreasonable to term what is a human asks of Cortana a service request***. That part of it is I don't really think in dispute.

Mahoney Decl. Ex. G (Medvidovic 11/15 Depo.) at 70:8-71:7. Microsoft's expert, Dr. Lieberman, agrees. Lieberman Decl. Ex. A ¶180 ("A '*service request*' is therefore just that—a representation of an utterance by the user requesting a service (*i.e.*, a command or request from a Cortana user)—although here it also 'must be recited in the claimed ICL and must meet every requirement of the claimed ICL,' as the Court has instructed."). The Court should therefore construe the claimed "service request" to mean what the user requests of the system.

Once properly construed, it is undisputed that the "service request" of ██████████ is ██████ text string, and ████████████████████████, or any other internal system control parameters. It is also undisputed that ██████ text string is not recited in the claimed ICL and does not satisfy the requirements of the claimed ICL. Indeed, neither IPA nor Dr. Medvidovic asserts that ██████ satisfies the Court's interpretation. Accordingly,

for the reasons set forth above, the Court should rule that the Accused Systems do not infringe any asserted claim as a matter of law at least because they do not include a "service request" that is recited in the claimed ICL.

    2.    <u>IPA Has No Evidence To Prove That the Accused Cortana ████████ Could Employ a Compound, Arbitrarily Complex Base Goal</u>

Independent claim 29 of the 115 Patent requires "interpreting a service request in order to determine ***a base goal that may be a compound, arbitrarily complex base goal***." Mahoney Decl. Ex. A (115 Patent) at Claim 29. The Court has interpreted both "compound goal" and "complex goal" to mean "a single-goal expression comprising multiple subgoals." D.I. 143 at 5. Similarly, the Court has interpreted "arbitrarily complex base goal" to mean "a single goal expression expressed in a language or syntax that allows multiple sub-goals and potentially includes more than one type of logical connector (e.g., AND, OR, NOT), and/or more than one level of logical nesting (e.g., use of parentheses), or the substantive equivalent." *Id.*

IPA and its expert assert that the "base goal" of this claim is satisfied by the ████ of a ████████ created by the Accused Systems after processing the user's request. *See* Mahoney Decl. Ex. H (Medvidovic Opening) ¶128. Dr. Medvidovic, however, never applies the Court's interpretation of "compound goal" because he never analyzes how the ████ of the accused ███ ████████ can be a "***a single-goal expression*** comprising multiple subgoals." *Id.* ¶¶121, 130-144, 410-416. Instead, Dr. Medvidovic ignores the word "expression" in the Court's interpretation and opines that the Accused Systems satisfy this claim language because they determine an ████ that may be a single goal that ***implicitly*** includes multiple sub-goals. *See id.* Indeed, in those portions of his report comparing this claim language to the Accused Systems, Dr. Medvidovic does not even use the word "expression." *See id.*

Similarly, as to "arbitrarily complex base goal," Dr. Medvidovic again ignores that the Court's interpretation requires "*a single goal **expression*** expressed in a language or syntax that allows multiple sub-goals," but instead asserts that this interpretation is satisfied so long as the accused base goal is expressed in a way that multiple sub-goals *can be inferred*, regardless of whether the multiple sub-goals can actually be "expressed" as part of the base goal. Mahoney Decl. Ex. H (Medvidovic Opening) ¶¶130-144, 410-416.

In his Reply Report, Dr. Medvidovic does not dispute that he has not shown that the Accused Systems can employ ███████ an actual expression comprising multiple sub-goals. Rather he argues that such a requirement is inconsistent with the language of the claims and the disclosure of the specification, and is also "illogical." Mahoney Decl. Ex. I (Medvidovic Reply) ¶¶58-62. That the Court's claim interpretations require "*a single-goal **expression*** comprising multiple subgoals" and "*a single goal **expression*** expressed in a language or syntax that allows multiple sub-goals," however, is no longer up for debate by Dr. Medvidovic because the Court has already adopted these agreed-upon interpretations at the request of both parties. *See* D.I. 104 at 13. Dr. Medvidovic's opinions as to how he would otherwise interpret the claims is not testimony that may go to the jury. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009) ("Once a district court has construed the relevant claim terms, and unless altered by the district court, then that legal determination governs for purposes of trial. No party may contradict the court's construction to a jury."). Moreover, expert testimony that fails to apply the Court's claim interpretation cannot raise genuine dispute of material fact. *Clare v. Chrysler Grp. LLC*, 819 F.3d 1323, 1332-33 (Fed. Cir. 2016). That testimony should be excluded, and Microsoft granted summary judgment of no infringement of the asserted claims of the 115 Patent on this basis.

Indeed, it is undisputed that the Accused Systems were not capable of processing ██████ ████████ (*i.e.*, the accused "base goal") that expressed multiple sub-goals.  For example, it is undisputed that in order for the Accused Systems to operate in the manner accused of infringement they must ████████████████████████████████████████████████ ███████████████████████████████████████████████.  Maly Decl. Ex. A ¶¶45, 59; Mahoney Decl. Ex. H (Medvidovic Opening) ¶¶170 (agreeing with Maly ¶45), 171 (agreeing with Maly ¶59), 117 (████████████████), 398 (same); Lieberman Decl. Ex. A ¶80.  Microsoft's expert Dr. Lieberman testified, however, ████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████ Lieberman Decl. Ex. A ¶¶164-169.[12]

Similarly, Microsoft's source code expert, Mr. Maly, explained that the Cortana Skills ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████ Maly Decl. Ex. A ¶98.  Dr. Medvidovic has offered no evidence to dispute this testimony.



---

[12]     Dr. Medvidovic does not dispute Dr. Lieberman's lack of viability opinion, but instead asserts that "based on the Court's construction, it is sufficient that the language or syntax in which the ████ is expressed ***allows for multiple sub-goals***."  Mahoney Decl. Ex. I (Medvidovic Reply) ¶64.  But the Court's interpretation requires "***a single-goal <u>expression comprising</u>*** multiple sub-goals," not merely that it "allow" for multiple sub-goals.

Indeed, Dr. Medvidovic's analysis is based on hypothetical compound/complex requests by a user asking Cortana to set multiple reminders. *See, e.g.*, Mahoney Decl. Ex. H (Medvidovic Opening) ¶¶133, 204, 224, 231, 242, 411, 413, 522, 529. Mr. Maly testified, however, ███████ ████████████████████████████████████████████████████████ ████████████████████████████ Maly Decl. Ex. A ¶98. Dr. Medvidovic offers no evidence to dispute this testimony.

Thus, on this record there is no genuine dispute that the accused ██████████ ██████ could not handle a compound or arbitrarily complex request, as the Court has construed those claim requirements. Microsoft is entitled to summary judgment on this basis as well as to all asserted claims of the 115 Patent.

3.    IPA Has Presented No Evidence the Accused ██████████ Schedule Based on Reasoning

Each of the asserted independent claims of the 560 Patent, *i.e.*, claims 50 and 53, require "using reasoning … to co-ordinate *and schedule* efforts by the autonomous service-providing electronic agents for fulfilling the sub-goal requests." Mahoney Decl. Ex. B (560 Patent) at Claims 50 and 53. In his Opening Report, Dr. Medvidovic's analysis of this claim language for claim 50 cites back to his analysis of language in claim 29 of the 115 Patent, a claim element he refers to as "claim 29[iv](b)." *See* Mahoney Decl. Ex. H (Medvidovic Opening) ¶¶326 (analyzing claim 50 ██████████████: "Cortana uses this reasoning to coordinate and schedule efforts by the skills to fulfill sub-goal requests *as explained in claim 29[iv](b)*."), 601 (analyzing claim 50 ████████████ "Cortana uses this reasoning to coordinate and schedule efforts by the skills to fulfill sub-goal requests *as explained in my analysis of claim 29[iv](b).*").

In his analysis of this claim language in claim 53, Dr. Medvidovic cites back to his analysis of the same language in claim 50. *See* Mahoney Decl. Ex. H (Medvidovic Opening) ¶¶346

20

(claim 53 ███████████████ : "*See* '560 patent, claim 50[ii](a)(1) (Sec. 10.1.6)."), 620 (claim 53 ███████████████ : "*See* '560 patent, claim 50[ii](a)(1) (Sec. 13.1.6)."). Thus, the only analysis Dr. Medvidovic provides for the "using reasoning … to co-ordinate ***and schedule*** efforts" language of claims 50 and 53 of the 560 Patent is a citation, or nested citations, to his analysis of claim 29 in claim element 29[iv](b).

But claim 29 does not include the "using reasoning … to … ***schedule*** efforts by the auton-omous service-providing electronic agents for fulfilling the sub-goal requests …" claim language, or any language that recites such scheduling. Rather, in what Dr. Medvidovic refers to as "claim 29[iv](b)," claim 29 recites:

> determining sub-goals required in completing the base goal by using reasoning that includes one or more of domain-independent coordination strategies, domain-spe-cific reasoning, and application-specific reasoning comprising rules and learning algorithms,

*See* Mahoney Decl. Ex. H (Medvidovic Opening) §§ 9.1.10, 12.1.10. Claim 29 therefore does not address the scheduling of efforts by agents to fulfill sub-goal requests and Dr. Medvidovic's anal-ysis of that portion of claim 29 never addressed the scheduling of such efforts either. *See id.* ¶¶219-231, 487-503. Dr. Medvidovic's opening report therefore utterly fails to address this claim element of claims 50 and 53 of the 560 Patent. Summary judgment of no infringement of those claims is therefore appropriate.

In his reply report, Dr. Medvidovic seeks to fill this hole, but does so only by mis-cites and wholly new theories. For example, he states that he did "explain how non-syntactic reasoning is used to coordinate and schedule efforts by the service-providing agents to fulfill the sub-goal re-quests," citing ¶369 of his opening report. Mahoney Decl. Ex. I (Medvidovic Reply) ¶143. Para-graph 369 of his opening report, however, relates only to the preamble of claim 29, which does not mention scheduling of agent efforts, and states in its entirety:

21

369.  A computer readable medium is a device that stores information for use by a computer processor, such as a digital memory or storage disk. Flash memory, magnetic disks, random access memory (RAM), and CPU cache are all common examples of computer-readable media.

Mahoney Decl. Ex. H (Medvidovic Opening) ¶369.

Dr. Medvidovic also cites back to Paragraph 325 of his opening report.  Mahoney Decl. Ex. I (Medvidovic Reply) ¶144.  Paragraph 325 of his opening report also does not relate to scheduling, or even mention it.  Rather that paragraph argues only that "the types of reasoning discussed in my analysis in claim 29[iv](b) are based on non-syntactic decomposition of the base goal." Mahoney Decl. Ex. H (Medvidovic Opening) ¶325.  Indeed, it is in the very next paragraph of his opening report that Dr. Medvidovic writes "Cortana uses this reasoning to coordinate and schedule efforts by the skills to fulfill sub-goal requests *as explained in claim 29[iv](b).*"  *Id.* ¶326.  Thus, he explicitly does not address "scheduling" in paragraph 325 because in paragraph 326 he says he addresses that claim requirement in "*claim 29[iv](b).*"

Finally, in paragraph 145 of his reply report Dr. Medvidovic asserts, for the first time that "[w]ith respect to scheduling, a POSITA would understand that ███████████████████ ██████████████████████████████████████████████████████████████ ████████████████████████████████████ Mahoney Decl. Ex. I (Medvidovic Reply) ¶145.  But while Dr. Medvidovic's expert report does, at times, █████████████ ██████████████████████████████████████ in his analysis of other claim language, nowhere does the report ever relate those processes to the claim language requiring "using reasoning … to … schedule efforts by the autonomous service-providing electronic agents for fulfilling the sub-goal requests," and paragraph 145 of his reply report never cites any portion of the opening report that does.  These new opinions therefore do not fill the hole in Dr. Medvidovic's analysis, and should not be considered anyway, as Microsoft's experts had no opportunity

to respond to them in their reports. *See TQ Delta, LLC v. Adtran, Inc.*, C.A. No. 14-954-RGA, 2021 WL 1200594, at *2 (D. Del. Mar. 30, 2021). Microsoft, therefore, respectfully requests summary judgment of no infringement of the asserted claims of the 560 Patent on this basis.

### C.    IPA Has Not Met Its Burden Of Proving Any Amount Of Damages

Microsoft is entitled to summary judgment on the issue of damages because IPA's proffered damages theory and expert proofs are insufficient to carry its burden of proving any amount of damages. *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1291-92 (Fed. Cir. 2020). That theory is fatally flawed as a matter of law and inadmissible under Rule 702. It should be excluded.

### 1.    Background

IPA's entire damages claim relies on a survey conducted by Dr. Reed-Arthurs. In that survey, Dr Reed-Arthurs purports █████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████    *See* Mahoney Decl. Ex. P (Reed-Arthurs Opening) ¶¶19-22; Maroney Decl. Ex. M (Kennedy Opening) ¶¶233-235. ████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████    *See* Mahoney Decl. Ex. S at Ex. 1. ██████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████    *Id*. ██████████████████████████

████████████████████████████████████    *Id*.

IPA's damages expert, Mr. Kennedy, used the results of ████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████. Mr. Kennedy opines ██████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████. Mr. Kennedy makes no effort to tie his royalty to the alleged use of the claimed methods and code (Mahoney Decl. Ex. E (Kennedy Depo.) at 44:13-34; 64:19-65:2), ███████

███████████████████████████ *See, e.g.,* Mahoney Decl. Ex. G (Medvidovic 11/15 Depo.) at 17:4-6 ████████████████████████████████████

████████████████████

    IPA's proffered damages case suffers from at least three fatal flaws under Rule 702 and applicable patent damages law. *First*, Mr. Kennedy commits two legal errors in his royalty assessment. He posits ██████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████ *Second*, the entirety of Mr. Kennedy's analysis is fatally flawed because it relies upon Dr. Reed-Authors' ████████████████████████

████████████████████ And, *third*, Dr. Reed-Arthurs' survey, ████████████████

███████████████████████████████████████████████

███████████████████████████████████████. *See* Mahoney Decl. Ex. M (Kennedy Opening) ¶¶233-235. ████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████. Each basis independently undermines IPA's damages case.

---

13 ████████████████████████████████████████████████

███████████████████████████████████████████████

2.      No Windows 10 Direct Infringement Proof or Apportionment

As demonstrated above, Dr. Medvidovic does not read any element of any asserted claim on any Windows 10 code or operation.  Nonetheless, Mr. Kennedy assumes, without more, that the sale of Windows 10 is a direct infringement and ████████████████████████████ ██████████████████.  Mr. Kennedy has no basis for his conclusion except Dr. Medvi-dovic's *ipse dixit* statement that Windows 10 sales are a direct infringement.  Under Rule 702, Mr. Kennedy cannot pass Dr. Medvidovic's *ipse dixit* statements through, and cannot rely on them as a basis for his own opinions. Moreover, because there is no proffer of any evidence of direct infringement by Windows 10, it is legally improper for Mr. Kennedy to ████████████ ████████████

Patent damages must be based on the use made of the claimed invention.  The patent dam-ages statute only allows recovery for "damages adequate to compensate for the infringement" and only allows a reasonable royalty for "the use made of the invention." 35 U.S.C. § 284.  IPA's experts read no element of any asserted claim on any Windows 10 code or that code's operations. The Supreme Court long ago clarified that royalties under Section 284 cannot be based on unpat-ented elements used with the patented invention since "the rules prohibiting extension of the patent monopoly to unpatented elements are not so readily circumvented."  *Aro Mfg. Co., Inc. v. Con-vertible Top Co.*, 337 U.S. 476, 505-08 (1964).  As such, Mr. Kennedy's ████████████ is legally baseless. *Id.*  It should be stricken.

The Federal Circuit repeatedly has reinforced this fundamental premise. A reasonable roy-alty base "cannot include activities that do not constitute patent infringement, as patent damages are limited to those 'adequate to compensate for the infringement.'" *Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 909 F.3d 398, 412 (Fed. Cir. 2018) (vacating jury damages award on royalty base including non-accused products) (citing *AstraZeneca AB v. Apotex Corp.*, 782 F.3d

1324, 1343 (Fed. Cir. 2015) (quoting § 284)).  "A patentee must take care to seek only those damages attributable to the infringing features."  *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014).  "Indeed, the Supreme Court long ago observed that a patentee 'must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative.'"  *Id.* (quoting *Garretson v. Clark*, 111 U.S. 120, 121 (1884)).

Further, the patentee bears the burden of proving patent damages.  *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011).  To carry this burden, "the patentee must sufficiently tie expert testimony on damages to the facts of the case."  *Id.*  "If the patentee fails to tie the theory to the facts of the case, the testimony must be excluded."  And, if the admissible testimony fails to establish damages on the infringement theory urged, a judgment of no damages is the appropriate result.  *TecSec*, 978 F.3d at 1291-92.

IPA also cannot reform Mr. Kennedy's expressed ████████ damages theory to now claim it encompasses an induced infringement damages theory.  *See Parallel Networks Licensing, LLC v. IBM*, C.A. No. 13-2072-KAJ, 2017 WL 1405155, at *1 (D. Del. Apr. 17, 2017).  Mr. Kennedy's disclosed damages theory included no basis for assessing a royalty based on the extent of consumers accessing the functions of the accused code, *i.e.*, consumer use.  Indeed, Mr. Kennedy concedes that his damages theory in no way rests upon or reflects extent of consumer use.  Mahoney Decl. Ex. G (Kennedy 11/17 Depo.) at 44:13-24; 64:19-65:2.

Mr. Kennedy's assessment of royalties ████████ for ***all*** Windows 10 consumer sales also violates the entire market value rule.  He has made no effort to apportion Windows 10 units based on actual use ████████ which Dr. Medvidovic reads the asserted claims.

Even if he apportioned the Windows 10 ███████ price and profits using Dr. Reed-Arthurs' ███████ ███████████ he did not apportion the units royalty base to tie the royalty base to the accused code. Under § 284, damages awarded for patent infringement "must reflect the value attributable to the infringing features of the product, and no more." *Ericsson, Inc. v. D-Link Sys., Inc.,* 773 F.3d 1201, 1226 (Fed. Cir. 2014). This principle is "the governing rule" "where multi-component products are involved." *Id.* The same principle must apply in counting units to which to apply the asserted royalty. "[T]o be admissible, all expert damages opinions must separate the value of the allegedly infringing features from the value of all other features." *Id.* Here, ███████████████ ███████████████████████████████████████████████. *See* Mahoney Decl. Ex. T (Reed-Arthurs Reply) ¶47 (citing Becker Decl. Ex. A ¶¶271-274). ███████████ ██████████████████████████████████████████████████ ██████████████████████████████.

The court addressed a nearly identical issue in *Via Vadis, LLC v. Amazon.com, Inc.,* No. 1:14-CV-00813-LY, 2022 WL 23351, at *4 (W.D. Tex. Jan. 3, 2022). There, plaintiff's damages expert had based damages on all of Amazon's S3 cloud storage revenue, rather than much smaller revenue Amazon received from usage of the accused BitTorrent interface. *Id.* at 4-5. After opining that "7 percent of S3 revenue was 'at risk' but for Amazon offering the BitTorrent interface," he calculated Amazon's "incremental profit" from the alleged infringement to be $70.9 million. *Id.* at 4. And just as Mr. Kennedy used total Windows 10 sales as his starting point, Via Vadis' expert used as his starting point "total S3 revenues—notwithstanding subsequent apportionment—rather than the market value for the [accused] BitTorrent service." *Id.* The court noted that "one way in which the error of an improperly admitted entire market value rule theory manifests itself is in the disclosure of the revenues earned by the accused infringer associated with a

complete product rather than the patented component only" which only serve to "artificially inflate the jury's damages calculation beyond that which is 'adequate to compensate for the infringement." *Id.* (citing *LaserDynamics, Inc. v. Quanta Computers, Inc.*, 694 F.3d 51, 67-68 (Fed. Cir. 2011)).

The same result is compelled here, where Mr. Kennedy applies his royalty to every copy of Windows 10 rather than to actual uses ███████████. Damages cannot be supported by evidence that infringers used additional, non-infringing features. *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1334 (Fed. Cir. 2009). Damages must be correlated appropriately to the extent the allegedly infringing feature is used by consumers. *Id*.



       3.   IPA's Damages Case Relies on Inherently Unreliable ███████ Adjustment Evidence

But Dr. Reed-Arthurs's adjustment factor has no basis in science or the facts of this case. She makes no showing that her adjustment factor is an accepted accounting factor or the product

of a peer-reviewed study.  Mahoney Decl. Ex. K (Reed-Arthurs Depo.) at 93:5–94:15.  Although

Dr. Reed-Arthurs determined ███████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████.  This is not science, but expert testimony "not based

upon the facts in the record but on altered facts and speculation designed to bolster [a party's]

position," and should be excluded.  *Guillory v. Domtar Indus. Inc.,* 95 F.3d 1320, 1331 (5th Cir.

1996); *see Burleson v. Tex. Dep't. Crim. Justice,* 393 F.3d 577, 587 (5th Cir. 2004) ("A court may

rightfully exclude expert testimony where [it] finds that an expert has extrapolated data and there

is 'too great an analytical gap between the data and the opinion proffered.'" (quoting *Gen. Elec.

Co. v. Joiner,* 522 U.S. 136, 146 (1997) ("opinion evidence that is connected to existing data only

by the *ipse dixit* of the expert" properly excluded))).

     Indeed, ███████████████████████████████████████████████████████████████

Mahoney Decl. Ex. P (Reed-Arthurs Opening) at Ex. 14b.  Dr. Reed-Arthurs failed to provide a

sufficient statistical basis for the adjustment factor itself ████████████████████████████████

███████████████████████████████████████████████████████.  Mahoney Decl. Ex. K

(Reed-Arthurs Depo.) at 93:5-94:22.  ████████████████████████████████████████████████

███████████████████████████████████████.  Mahoney Decl. Ex. P (Reed-

Arthurs Opening) at Ex. 14b.  She could offer no statistical basis for concluding that ██████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

█████████████████████████████. Mahoney Decl. Ex. K (Reed-Arthurs Depo.) at 93:19–94:22, 103:17–105:12.

Dr. Reed-Arthurs' adjustment is further flawed at a more fundamental level, ████████ █████████████████████████████████. Specifically, her adjustment ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ █████████████████████████. Expert "adjustments" must be rooted in the facts of the case, and tied to the specific accused operations. *Droplets, Inc. v. Yahoo! Inc.*, No. 12-cv-03733-JST, 2021 WL 9038355, at *4-9 (N.D. Cal. Aug. 9, 2021). Courts further may consider "whether the theory or technique the expert employs is generally accepted; whether the theory has been subjected to peer review and publication; whether the theory can and has been tested; whether the known or potential rate of error is acceptable; and whether there are standards controlling the technique's operation." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007) (citing *Daubert*, 509 U.S. at 593); *see also Contour IP Holding LLC v. GoPro, Inc*, No. 3:17-cv-04738-WHO, 2021 WL 75666, at *12-13 (N.D. Cal. Jan. 8, 2021) (rejecting profit split with no "general acceptance of the method."). But, here, this adjustment has been constructed solely to ██████████████████████████████████████████████ ██████████████████████████████.

Dr. Reed-Arthurs's adjustment cannot meet the requirements of Rule 702 and should be stricken—as should all of IPA's damages case which relies upon it.

4.    <u>Dr. Reed-Arthurs' ████████ is Fatally Flawed</u>

Finally, Dr. Reed-Arthurs' ██████████████ ██████████████████████ ████████████████████████████████████████████

████████ IPA's technical expert never reads the asserted claims on Windows 10 code.  Instead, he reads the claims on ████████████████████████████████████████ ████████████████████████████████.  Regardless of whether Dr. Reed-Arthurs' ███████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████.  Nonetheless, IPA's stated damages theory assumes that the accused ████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████.

Because the ██████ tested the wrong product, it cannot form the basis under Rule 702 for Dr. Reed-Arthurs or Mr. Kennedy to conclude what the actual consumer willingness to pay would have been for use of the accused ██████████.  All of Mr. Kennedy's damages analysis rests upon those ██████ results, and accordingly should be stricken.

    D.    <u>IPA Is Not Entitled to Pre-Suit Damages Because of a Failure to Mark</u>

IPA contends that it ████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████



Absent marking or adequate notice of infringement, IPA cannot collect for any pre-suit infringement. *Arctic Cat Inc*, 876 F.3d at 1365. Because IPA did not assert the 115 and 560 Patents until its Second Amended Complaint filed on March 20, 2018 (D.I. 16), its potential period for recovery of damages did not begin until that time. *See Robert Bosch LLC v. Alberee Prod., Inc.*, C.A. No. 12-574-LPS, 2015 WL 5576746, at *1-4 (D. Del. Sept. 16, 2015) (finding the accused infringer not liable for damages before service of amended complaints for accused products and asserted patents added in the amended complaints). As such, Microsoft is entitled to summary judgment that IPA is not entitled to recover any damages prior to that date. *Id.*

    E.    <u>IPA's Doctrine of Equivalents Allegations Fail Under Rule 702 and as a Matter of Law</u>

Claim 29 of the 115 Patent requires executable instructions for "constructing a base goal Satisfaction plan." Mahoney Decl. Ex. A (115 Patent) at 32:9. Claims 50 and 53 of the 560 Patent include similar language. Mahoney Decl. Ex. B (560 Patent) at 35:1-2, 36:19-20. IPA's expert summarily asserts that such language is satisfied under the doctrine of equivalents, as follows:

> The above-described modules collectively constitute the "goal satisfaction plan" under the doctrine of equivalents because, as explained above, these modules

"work together to perform substantially the same function (constructing a goal sat-
isfaction plan), in substantially the same way (determining whether the requested
service is available, determining sub-goals required in completing the base goal,
selecting service-providing electronic agents from the agent registry suitable for
performing the determined sub-goals, and ordering a delegation of sub-goal re-
quests to complete the requested service), to achieve substantially the same result
(the creation of a goal satisfaction plan that is implemented to achieve the desired
result for the user)."

Mahoney Decl. Ex. H (Medvidovic Opening) ¶205.

Such summary allegations are insufficient to prove infringement under the doctrine of

equivalents as a matter of law because they do not include "particularized testimony and linking

argument as to the insubstantiality of the differences between the claimed invention and the ac-

cused device or process" on a "limitation-by-limitation basis." *Network Commerce, Inc. v. Mi-

crosoft Corp.*, 422 F.3d 1353, 1363 (Fed. Cir. 2005). The analysis above includes no identification

of the "differences between the claimed invention and the accused device or process" that are being

analyzed and no explanation as to why those differences might be insubstantial. Nor does that

analysis explain how or why the accused software modules supposedly satisfy the function, way,

or result prongs. IPA has therefore failed to provide analysis sufficient to prove infringement

under the doctrine, and summary judgment in Microsoft's favor on this issue should be granted.

Moreover, IPA's equivalents allegations are foreclosed by both amendment-based and ar-

gument-based estoppel. In particular, during prosecution of the 115 Patent the examiner rejected

the claims as obvious over a combination of the prior art. *See* Mahoney Decl. Ex. C at IPA-

00083162 (July 17, 2002 Non-Final Rejection). The applicants amended claim 1 to add the "con-

structing a goal satisfaction plan" language, Mahoney Decl. Ex. C at IPA-000829265, and argued

that the newly added language distinguished the prior art, *id*. at IPA-00082926 (Nov. 25, 2002

Amendment and Response). The applicants similarly argued that Claim 29 was patentable over

the prior art specifically because it required "construction of a goal satisfaction plan," expressly

equating the "constructing a <u>base</u> goal satisfaction plan" of claim 29 with the newly added "constructing a goal satisfaction plan" language of claim 1. *Id*. at IPA-00082926-27.[14]

The claims were rejected again over the prior art, Mahoney Decl. Ex. C at IPA-00082900 (March 03, 2003 Non-Final Rejection), and the applicant responded with an argument as to why the requirement of constructing a goal satisfaction plan rendered the claims (including claim 29) patentable, *id*. at IPA-00082883 (June 06, 2003 Applicant Arguments/Remarks). The claims were rejected yet again, *see* Mahoney Decl. Ex. C at IPA-00082841-60 (Nov. 28, 2003 Examiner Final Rejection), and once again the applicant responded by arguing the claims (including claim 29) were patentable because of the "constructing a goal satisfaction plan" claim element, *see* Mahoney Decl. Ex. C at IPA-00082823-25 (March 28, 2004 Applicant Responses and Remarks).

The applicants' November 27, 2002 amendment to claim 1 adding the "constructing a goal satisfaction plan" language was a narrowing amendment made for purposes of patentability because it further limited the claim and was made in response to a prior art rejection. IPA is therefore presumptively estopped from relying on the doctrine for such claim language in any claim, *Builders Concrete, Inc. v. Bremerton Concrete Prods. Co.*, 757 F.2d 255, 260 (Fed. Cir. 1985), and has offered no argument as to how that presumption could be rebutted.[15]

---

[14]    For example, the applicants argued "Claims 29, 61, 71 and 86, each contain the limitation requiring the 'construction of a goal satisfaction plan'. … Claim 29, recites in part, the limitations of:  '**constructing** a base **goal satisfaction plan** …'" The bolding in this quote, which emphasizes only the word "constructing a … goal satisfaction plan," is in the original argument submitted by the applicants. *See id*. Thus, the applicants stated that claim 29 required "construction of a goal satisfaction plan" and cited the "constructing a <u>base</u> goal satisfaction plan" language as proof.

[15]    IPA may argue that claim 29 requires constructing a "<u>base</u> goal satisfaction plan" and claim 1 was amended to require constructing a "goal satisfaction plan," and that distinction avoids the estoppel. Not so, because a "base goal satisfaction plan" is a "goal satisfaction plan" and IPA explicitly equated the two in its amendment. Mahoney Decl. Ex. C at IPA-00082926-927; n.5 *supra*. Moreover, such minor differences in claim language do not avoid estoppel. "Since the language 'the full size image' imposes the same limitation as 'said/the data' … , prosecution

IPA is also estopped by its clear and unambiguous arguments that claim 29 was patentable specifically because of the "constructing a base goal satisfaction plan" language. As noted above, the applicants expressly argued "Claims 29 … contain[s] the limitation requiring the "construction of a goal satisfaction plan" and then quoted the "constructing a base goal satisfaction plan" language of claim 29. The applicants then argued that "[t]herefore, based on the reasons stated herein, it is respectfully submitted that Claims 29, 61, 71 and 86, are allowable over the art of record for at least the reasons provided herein with respect to Claim 1." Mahoney Decl. Ex. C at IPA-00082926-927. Thus, the applicants clearly and unambiguously argued that the "constructing a base goal satisfaction plan" language of claim 29 distinguished the prior art. IPA should therefore be estopped from relying on the doctrine of equivalents for that language as a matter of law.

F.    IPA's Induced Infringement Allegations Fail Under Rule 702 and as a Matter of Law

IPA's expert asserts a narrow theory, *i.e.*, that Microsoft induces infringement ███████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████   Mahoney Decl. Ex. H (Medvidovic Opening) ¶¶629-631. However, as demonstrated above, Dr. Medvidovic does not read any claim on any client device, ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████

Microsoft is therefore entitled to summary judgment of no induced infringement as a matter of

history estoppel also applies to that element of claim 11." *Ampex Corp. v. Eastman Kodak Co.*, 460 F. Supp. 2d 563, 569 n.5 (D. Del. 2006).

law. *Limelight Networks v. Akamai Technologies*, 134 S. Ct. 2111, 2117 (2014) ("[W]here there has been no direct infringement, there can be no inducement of infringement under § 271(b).").[16]

Moreover, induced infringement requires a finding that the defendant had both knowledge of the patent and "knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB SA*, 131 S. Ct. 2060, 2068 (2011). As putative knowledge of the asserted patents, Dr. Medvidovic refers to (without citing any actual documents) the citation of the asserted patent during prosecution of two Microsoft patent applications. Mahoney Decl. Ex. H (Medvidovic Opening) ¶627. Dr. Medvidovic cites no evidence and offers no explanation as to how the citation of those patents during unrelated patent prosecution gave Microsoft notice of the patents. There is, for example, no evidence in the record that anyone at Microsoft was ever informed of their citation. IPA therefore has no evidence of pre-suit knowledge of the asserted patent. *DermaFocus LLC v. Ulthera, Inc.*, 201 F. Supp. 3d 465, 471 (D. Del. 2016).

Dr. Medvidovic also asserts that the knowledge requirement for indirect infringement is satisfied because ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████ Mahoney Decl. Ex. H (Medvidovic Opening) ¶¶628, 638–642. But the asserted claims are directed to how software "agents" respond to a user request and, specifically, to the details of their processing and communication using an interagent communication language. *See* Mahoney Decl. Ex. A (115 Patent) at Claim 29; Mahoney Decl. Ex. B (560 Patent) at Claims 50, 53. Dr. Medvidovic cites no evidence that Microsoft knew ████████████████████████████████████████████████████████

---

[16]    In its infringement contentions, IPA alleges, without citation to any evidence, that Microsoft induces infringement because "Microsoft instructs and encourages end users to use the infringing products." Mahoney Decl. Ex. L at 3. Because IPA cites no evidence in support of its assertion, and Dr. Medvidovic does not include this theory in his report, IPA cannot carry its burden to prove inducement on this theory.

practices any of the asserted claims, *see id.*, so he has no evidence that Microsoft knew the accused Cortana ███████████ might be infringing.

And while Dr. Medvidovic also asserts that "Microsoft believed that there was a high probability that it infringed the asserted patents based ██████████████████████████████ ████████," *id.* ¶628, he once again cites no evidence to support that assertion. Moreover, a finding of "willful blindness" also requires proof that "the defendant [took] deliberate actions to avoid learning of that fact." *Global-Tech*, 131 S. Ct. at 2070. Dr. Medvidovic never even addresses that aspect of the law and certainly identifies no such actions by Microsoft or evidence that Microsoft ever took such actions, *see* Mahoney Decl. Ex. H (Medvidovic Opening) ¶¶628, 638-642, so IPA has no evidence to prove willful blindness. The Court should therefore enter summary judgment of no induced infringement.

G.    IPA's Contributory Infringement Allegations Fail Under Rule 702 and as a Matter of Law

IPA's expert alleges that Microsoft contributorily infringes (i) "by licensing and/or offering to license Cortana to third-parties," (ii) "by selling and/or offering to sell Cortana-enabled Windows 10 to enterprise users," and (iii) by "instruct[ing] third parties on and charg[ing] a fee to third parties for incorporating Cortana into third-party products." Mahoney Decl. Ex. H (Medvidovic Opening) ¶¶625, 634-35. Contributory infringement, however, requires proof of "offer[ing] to sell or selling a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention." 35 U.S.C. §271(c).

As to licensing, Dr. Medvidovic ███████████████████████████████████ ██████████████████████████████████████████████████████████████████████

███████  ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████  [18] And IPA has no evidence to support a finding otherwise. Such licens-

ing of software does not constitute the sale or offer to sell of a component, material or apparatus

for purposes of contributory infringement as a matter of law. *PharmaStem Therapeutics, Inc. v.*

*Viacell, Inc.*, 491 F.3d 1342, 1357 (Fed. Cir. 2007); *Nuance Communications Inc. v. Tellme Net-*

*works Inc.*, 707 F. Supp. 2d 472 (D. Del. 2010).

As to Windows 10, as demonstrated above, IPA's infringement expert does not read any

claim element of the asserted claims on Windows 10 or cite any Windows 10 code in his report,

████████████████████████████████████████████████████████

*see* Mahoney Decl. Ex. H (Medvidovic Opening) ¶¶86-87; Maly Decl. Ex. A ¶37, n.1; Mahoney

Decl. Ex. G (Medvidovic 11/15 Depo.) at 15:1-18, and any opinions of the expert otherwise should

be excluded for the reasons set forth above. Windows 10 therefore cannot, in this case, be a "com-

ponent" of any patented machine etc. or "a material or apparatus for use in practicing a patented

process, constituting a material part of the invention."

Similarly, ***instructing*** third parties how to "incorporate" Cortana into a third-party device

or charging them a fee does not constitute offering to sell or selling "a component of a patented

machine, manufacture, combination or composition, or a material or apparatus for use in practicing

a patented process, constituting a material part of the invention," and no reasonable jury could

---



17 ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████████

conclude otherwise. *Cf. Pellegrini v. Analog Devices, Inc.*, 375 F.3d 1113, 1118 (Fed. Cir. 2004) (finding that supplying instructions does not constitute supplying a "component" for purposes of § 271(f)).

Finally, contributory infringement requires proof that "the alleged contributory infringer knew that the combination for which his component was especially designed was both patented and infringing." *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964). As demonstrated above, IPA has no evidenced that Microsoft knew about the asserted patents, knew that the accused Cortana ██████████ might infringe, or was willfully blind to either possibility. The Court should therefore enter summary judgment of no contributory infringement.[19]

### H.    IPA Lacks Evidence To Prove Willfulness

Willful infringement requires proof that the defendant (1) was aware of the patent at the time of infringement or subjectively believed there was a high probability the patent existed and deliberately avoided learning that fact; and (2) deliberately or intentionally infringed the patent, including acts of recklessness. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016). IPA's willfulness allegations are based on the same unsupported assertions that (i) Microsoft knew about the asserted patents once they were cited during prosecution of unrelated patent applications, and (ii) ███████████████████████████████████████████████ " Mahoney Decl. Ex. S at 8; Mahoney Decl. Ex. H (Medvidovic Opening) ¶¶638-640. As demonstrated above, IPA has no evidence to prove either assertion.

---

[19]    In its infringement contentions IPA also alleges, without citation to evidence, that Microsoft contributorily infringes because it "has knowledge that Microsoft Cortana, which has no substantial non-infringing use, will be utilized by end users to directly infringe the patents-in-suit by using Microsoft Cortana on their smartphones, tablets, or other devices." Mahoney Decl. Ex. L at 3. Because IPA cites no evidence in support of its assertion, or cite to the sale of any component, material or apparatus that could satisfy § 271(c), IPA cannot carry its burden to prove inducement on this theory.

Moreover, knowledge of the patents without more is not sufficient to show willfulness as a matter of law. *iFIT, Inc. v. Peloton Interactive, Inc.*, C.A. No. 21-507-RGA, 2022 WL 609605, at *4 (D. Del. Jan. 28, 2022) ("Even if iFIT had sufficiently alleged knowledge of the '407 patent, mere knowledge of the patent cannot support an allegation of willful infringement. *Evonik Degussa GmbH v. Materia, Inc.*, 305 F. Supp. 3d 563, 577 (D. Del. 2018). iFIT must plead both knowledge of the patent and of the infringement.") Nor can the mere citation of the patents during unrelated prosecution show the deliberate or intentional infringement required for a finding of willfulness. *Callwave Commc'ns LLC v. AT & T Mobility LLC*, C.A. No. 12-1701-RGA, 2014 WL 5363741, at *2 (D. Del. Jan. 28, 2014).

Finally, Dr. Medvidovic improperly opines on Microsoft's state of mind, on what Microsoft reasonably could have understood, and on the ultimate issue of willfulness in his expert report, so his testimony should be excluded. Mahoney Decl. Ex. H (Medvidovic Opening) ¶¶636-642. Dr. Medvidovic has no particular expertise about Microsoft's state of mind or understanding, or about willfulness generally, that sets him apart from a lay juror, and thus his opinions on these issues will not be helpful to the jury. *See Zimmer Surgical, Inc. v. Stryker Corp.*, 365 F. Supp. 3d 466, 497 (D. Del. 2019) ("Expert testimony as to ... state of mind offers no more than the drawing of an inference from the facts of the case ... and permitting expert testimony on this subject would be merely substituting the expert's judgment for the jury's."). The Court should exclude that testimony and enter summary judgment of no willful infringement.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

_____

Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19801
(302) 658-9200
rsmith@morrisnichols.com

*Attorneys for Defendant Microsoft Corporation*

OF COUNSEL:

Joseph A. Micallef
Matthew Mahoney
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC  20005
(202) 736-8000

Richard A. Cederoth
Nathaniel C. Love
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL  60603
(312) 853-7000

November 22, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on November 22, 2023, upon the following in the manner indicated:

Stephen B. Brauerman, Esquire                    *VIA ELECTRONIC MAIL*
BAYARD, P.A.
600 North King Street, Suite 400
Wilmington, DE 19801
*Attorneys for Plaintiff*

Paul J. Skiermont, Esquire                       *VIA ELECTRONIC MAIL*
Sarah E. Spires, Esquire
Steven W. Hartsell, Esquire
Alexander E. Gasser, Esquire
Jaime K. Olin, Esquire
Kevin P. Potere, Esquire
Todd A. Martin, Esquire
SKIERMONT DERBY LLP
2200 Ross Avenue, Suite 4800W
Dallas, TX 75201
*Attorneys for Plaintiff*

Mieke K. Malmberg, Esquire                       *VIA ELECTRONIC MAIL*
SKIERMONT DERBY LLP
800 Wilshire Blvd., Suite 1450
Los Angeles, CA 90017
*Attorneys for Plaintiff*


                                        */s/ Rodger D. Smith II*
                                        _____
                                        Rodger D. Smith II (#3778)