**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

IPA TECHNOLOGIES INC.,

                Plaintiff,

v.

MICROSOFT CORPORATION,

                Defendant.

C.A. No. 1:18-cv-00001-RGA-SRF

PUBLIC VERSION FILED: 12/22/23

---

**PLAINTIFF'S OPPOSITION TO MICROSOFT'S MOTION FOR SUMMARY**
**JUDGMENT AND TO EXCLUDE IPA TECHNOLOGIES INC.'S EXPERT OPINIONS**

Dated: December 15, 2023

*Of Counsel*:

Paul J. Skiermont
Jaime K. Olin
Steven W. Hartsell
Kevin P. Potere
Todd A. Martin
SKIERMONT DERBY LLP
1601 Elm Street, Suite 4400
Dallas, TX 75201
(214) 978-6600
pskiermont@skiermontderby.com
jolin@skiermontderby.com
shartsell@skiermontderby.com
kpotere@skiermontderby.com
tmartin@skiermontderby.com

Mieke K. Malmberg
SKIERMONT DERBY LLP
633 West 5th Street, Suite 5800
Los Angeles, CA 90071
(213) 788-4500
mmalmberg@skiermontderby.com

BAYARD, P.A.

Stephen B. Brauerman (#4952)
600 North King Street, Suite 400
Wilmington, DE 19801
(302) 655-5000
sbrauerman@bayardlaw.com

*Attorneys for Plaintiff,*
*IPA Technologies Inc.*

I.    INTRODUCTION.............................................................................................. 1

II.   ARGUMENT .................................................................................................... 2

      A.    Microsoft's Cortana Practices the "Service Request" Limitation of the
            Asserted Claims ...................................................................................... 2

            1.    Cortana's Service Requests are Recited in the Claimed ICL...................... 2

                  a.    Dr. Medvidovic addressed the "recited in" portion of the
                        Court's construction. ..................................................................... 2
                  b.    The Cortana functionality Dr. Medvidovic mapped to the
                        claimed service request is recited in ICL. ........................................ 4

            2.    The Court Need Not Re-Construe "Service Request," But If It
                  Chooses To Do So, the Court Should Adopt IPA's Proposed
                  Construction. ......................................................................................... 6

            3.    Cortana's ███████████████  are the Claimed Service Request.............. 10

      B.    Microsoft's Cortana Practices the "Compound Goal" Limitation of the
            Asserted Claims ...................................................................................... 11

            1.    Dr. Medvidovic Shows That an ███████ is a Single-Goal
                  Expression Comprising Multiple Subgoals................................................. 11

            2.    Dr. Medvidovic Shows That an ███████ Is an Arbitrarily Complex
                  Base Goal ............................................................................................. 13

      C.    Microsoft's Cortana Practices the "Scheduling" Limitation of the Asserted
            Claims .................................................................................................... 15

      A.    IPA's Direct Infringement Theories are Legally Sound ......................... 17

            1.    IPA Has Shown That Microsoft Directly Infringes When ███████
                  ████████████████████████████████████ ........................................... 17

            2.    Cortana Is Part of Microsoft's Windows 10 Operating System ................ 18

      B.    Mr. Kennedy's Expert Opinion on Damages is Admissible...................... 20

            1.    Summary of Mr. Kennedy and Dr. Reed-Arthurs' Damages
                  Analyses .............................................................................................. 20

            2.    Microsoft Directly Infringes the Asserted Patents ................................... 21

3.     Mr. Kennedy Is Not Required To Rely On ████████████ When Calculating a Reasonable Royalty ........................................................ 24

4.     Mr. Kennedy Does Not Violate the Entire Market Value Rule ................ 26

C.     Dr. Reed-Arthurs' Expert Opinion is Reliable and Relevant ............................... 28

1.     Microsoft Does Not Challenge Dr. Reed-Arthurs' Qualifications as an Expert or the Overall Methodology Used in Her Survey .................... 28

2.     Dr. Reed-Arthurs's Willingness-To-Pay Calculations Are Accurate ........ 29

3.     Dr. Reed-Arthurs Provided Ample Justification for Adjustments Made to her Willingness-to-Pay Calculations ........................................... 32

4.     Microsoft's Attorney Criticism of Dr. Reed-Arthurs' Inclusion of ████████████ Lacks Merit ....................................................... 34

D.     Microsoft Never Met its Burden Under the Marking Statute .............................. 36

E.     IPA Will Not Continue to Pursue its Doctrine of Equivalents Allegations ........... 36

F.     IPA's Indirect Infringement Allegations Are Supported By Sufficient Evidence ........................................................................................................ 36

1.     IPA Has Set Forth Evidence Showing Microsoft Induced Infringement .............................................................................................. 36

2.     IPA Has Set Forth Evidence Showing Microsoft Contributed to Infringement .............................................................................................. 38

G.     IPA's Willfulness Allegations are Supported By Sufficient Evidence ................. 39

III.     CONCLUSION .............................................................................................................. 40

# TABLE OF AUTHORITIES

## CASES

*Abbott Diabetes Care Inc. v. DexCom, Inc.*,
   Case No. 21-cv-977-KAJ (D. Del.) (Aug. 23, 2023) (D.I. 490) ................................................40

*AHP Subsidiary Holding Co. v. Stuart Hale Co.*,
   1 F.3d 611 (7th Cir. 1993) ........................................................................................................31

*Apple Inc. v. Samsung Elecs. Co. Ltd.*,
   839 F.3d 1034 (Fed. Cir. 2016) ................................................................................................10

*Apple, Inc. v. Samsung Elecs. Co. Ltd.*,
   No. 12-CV-00630-LHK, 2014 WL 794328 (N.D. Cal. Feb. 25, 2014) .....................................31

*Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*,
   No. 15-152- RGA, 2018 WL 4691047 (D. Del. Sept. 28, 2018) ...............................................33

*Biscotti Inc. v. Microsoft Corp.*,
   No. 2:13-CV-01015-JRG-RSP, 2017 WL 253696 (E.D. Tex. May 18, 2017) ...........................26

*B–K Lighting, Inc. v. Fresno Valves & Castings, Inc.*,
   375 Fed. Appx. 28 (Fed. Cir. 2010) .........................................................................................30

*Braun v. Lorillard Inc.*,
   84 F.3d 230 (7th Cir. 1996) ......................................................................................................35

*C.R. Bard Inc. v. AngioDynamics, Inc.*,
   979 F.3d 1372 (Fed. Cir. 2020) ................................................................................................22

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
   No. 09-290, 2012 WL 3679564 (W.D. Pa. Aug. 24, 2012)........................................................27

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*,
   1 F. App'x 879 (Fed. Cir. 2001) ...............................................................................................24

*Clicks Billiards, Inc. v. Sixshooters, Inc.*,
   251 F.3d 1252 (9th Cir. 2001) ..................................................................................................31

*Continental Can Co. USA, Inc. v. Monsanto Co.*,
   948 F.2d 1264 (Fed. Cir. 1991) ................................................................................................35

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) ............................................................................................................31, 33

*DermaFocus LLC v. Ulthera, Inc.*,
   201 F. Supp. 3d 465 (D. Del. 2016) ..........................................................................................37

*Dura Automotive Sys. of Ind., Inc. v. CTS Corp.*,
   285 F.3d 609 (7th Cir. 2002) ...........................................................................21

*Ecolab, Inc. v. Amerikem Labs, Inc.*,
   98 F. Supp. 2d 569 (D.N.J. 2000), *vacated and remanded sub nom. on other grounds*, 264 F.3d
   1358 (Fed. Cir. 2001) ....................................................................................35

*Ericsson, Inc. v. D-Link Sys., Inc.*,
   773 F.3d 1201 (Fed. Cir. 2014) ................................................................27, 33

*Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*,
   879 F.3d 1332 (Fed. Cir. 2018) ......................................................................28

*GlaxoSmithKline LLC v. Glenmark Pharms. Inc.*,
   No. CV 14-877-LPS-CJB, 2017 WL 8948975 (D. Del. May 30, 2017) *report and
   recommendation adopted*, No. CV 14-877-LPS-CJB, 2017 WL 2536468 (D. Del. June 9,
   2017) .............................................................................................................28

*Guardant Health, Inc. v. Found. Med., Inc.*,
   No. CV 17-1616-LPS-CJB, 2020 WL 6742965 (D. Del. Nov. 17, 2020).................33

*Hanson v. Alpine Valley Ski Area, Inc.*,
   718 F.2d 1075 (Fed. Cir. 1983) ......................................................................25

*In re Kollar*,
   286 F.3d 1326 (Fed. Cir. 2002) ......................................................................39

*Integra Lifescis. Corp. v. HyperBranch Med. Tech., Inc.*,
   No. 15-819-LPS-CJB, 2018 WL 1785033 (D. Del. Apr. 4, 2018)..........................33

*Intellectual Ventures I LLC v. Symantec Corp.*,
   234 F. Supp. 3d 601 (D. Del. 2017), *aff'd*, 725 F. App'x 976 (Fed. Cir. 2018).........24

*IPA Techs. Inc. v. Amazon.com, Inc.*,
   Civil Action No. 16-1266-RGA (Oct. 28, 2021) (D.I. 405) ....................................2

*Kilbride Invs. Ltd. v. Cushman & Wakefield of Pa., Inc.*,
   No. 13-5195, 2018 WL 1960826 (E.D. Pa. Apr. 26, 2018).....................................33

*Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*,
   452 F. Supp. 2d 772 (W.D. Mich. 2006), *aff'd*, 502 F.3d 504 (6th Cir. 2007).........29

*Liquid Dynamics Corp v. Vaughan Co., Inc.*,
   449 F.3d 1209 (Fed. Cir. 2006) ......................................................................31

*Longhorn Vaccines & Diagnostics, LLC v. Spectrum Solutions LLC*,
   564 F. Supp. 3d 1126 (D. Utah 2021) ..............................................................37

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009) ........................................................................24

*Lytone Enterprise, Inc. v. Agrofresh Solutions, Inc.*,
   No. 20-678-LPS, 2021 WL 534868 (D. Del. Feb. 12, 2021), *report and recommendation adopted*, 2021 WL 1153002 (D. Del. Mar. 26, 2021) ..............................................37

*Marketquest Grp., Inc. v. BIC Corp.*,
   No. 11-CV-618-BAS (JLB), 2018 WL 1782724 (S.D. Cal. Apr. 12, 2018) ...........................29

*Messick v. Novartis Pharms. Corp.*,
   747 F.3d 1193 (9th Cir. 2014) ........................................................................31

*MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*,
   199 F. Supp. 3d 818 (S.D.N.Y. 2016).................................................................15

*Microsoft Corp. v. Motorola, Inc.*,
   904 F. Supp. 2d 1109 (W.D. Wash. 2012) ...........................................................28

*Miller v. Fuhu Inc.*,
   No. 2:14-cv-06119-CAS-AS, 2015 WL 7776794 (C.D. Cal. Dec. 1, 2015)............................28

*Nuance Comms. Inc. v. Tellme Networks Inc.*,
   707 F. Supp. 2d 472 (D. Del. 2010) ..................................................................39

*Odyssey Wireless, Inc. v. Apple Inc.*,
   No. 15-CV-01735-H-RBB, 2016 WL 7644790 (S.D. Cal. Sept. 14, 2016).............................28

*Ormco Corp. v. Align Tech., Inc.*,
   463 F.3d 1299 (Fed. Cir. 2006) ........................................................................20

*Personal Audio, LLC v. Google LLC*,
   No. CV 17-1751-CFC-CJB, 2021 WL 5038740 (D. Del. Oct. 25, 2021)..............................34

*PharmaStem Therapeutics, Inc. v. Viacell, Inc.*,
   491 F.3d 1342 (Fed. Cir. 2007) ........................................................................39

*Purewick Corp. v. Sage Prod., LLC*,
   No. CV 19-1508-(MN), 2023 WL 2734418 (D. Del. Mar. 31, 2023), *appeal dismissed*, No. 2023-1868, 2023 WL 4230367 (Fed. Cir. June 28, 2023) ..............................................22

*Rembrandt Social Media, LP v. Facebook, Inc.*,
   22 F. Supp. 3d 585 (E.D. Va. 2013) ..................................................................26

*Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*,
   30 F.4th 1109 (Fed. Cir. 2022) ........................................................................37

*Saavedra v. Eli Lilly & Co.*,
   No. 2:12-CV-9366-SVW, 2014 WL 7338930 (C.D. Cal. Dec. 18, 2014)................................27

*Sentius Int'l, LLC v. Microsoft Corp.*,
   No. 5:13-CV-00825-PSG, 2015 WL 331939 (N.D. Cal. Jan. 23, 2015)....................................34

*Shire Viropharma Inc. v. CSL Behring LLC*,
   No. CV 17-414, 2021 WL 1227097 (D. Del. Mar. 31, 2021) ....................................24

*Sloan Valve Co. v. Zurn Indus., Inc.*,
   33 F. Supp. 3d 984 (N.D. Ill. 2014)....................................26

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
   254 F. Supp. 3d 680 (D. Del. 2017), *aff'd in relevant part*, 930 F.3d 1295 (Fed. Cir. 2019)....26

*Summit 6, LLC v. Samsung Elecs. Co.*,
   802 F.3d 1283 (Fed. Cir. 2015) ....................................33

*TecSec, Inc. v. Adobe Inc.*,
   978 F.3d 1278 (Fed. Cir. 2020) ....................................37

*Toshiba Corp. v. Imation Corp.*,
   681 F.3d 1358 (Fed. Cir. 2012) ....................................22

*TQP Dev., LLC v. 1-800-Flowers.com, Inc.*,
   No. 2:11-cv-248-JRG, 2015 WL 6694116 (E.D. Tex. Nov. 3, 2015)....................................23

*Transcenic, Inc. v. Google, Inc.*,
   C.A. No. 11–582–LPS, 2014 WL 7275835 (D. Del. Dec. 22, 2014)....................................30

*TV Interactive Data Corp. v. Sony Corp.*,
   929 F. Supp. 2d 1006 (N.D. Cal. 2013)....................................30, 31

*U.S. v. Bonds*,
   12 F.3d 540 (6th Cir. 1993) ....................................31

*Vanzant v. Hill's Pet Nutrition Inc.*,
   No. 17 C 2535, 2023 WL 6976988 (N.D. Ill. Oct. 23, 2023) ....................................34

*Via Vadis, LLC v. Amazon.com, Inc.*,
   No. 1:14-CV-00813-LY, 2022 WL 23351 (W.D. Tex. Jan. 3, 2022)....................................27

*Viacom Int'l v. IJR Cap. Invs., L.L.C.*,
   891 F.3d 178 (5th Cir. 2018)....................................29

*VirnetX, Inc. v. Cisco Sys., Inc.*,
   767 F.3d 1308 (Fed. Cir. 2014) ....................................33

*VS Techs., LLC v. Twitter, Inc.*,
   No. 2:11cv43, 2011 WL 4744572 (E.D. Va. Oct. 5, 2011) ....................................33

*W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*,
  No. CV 11-515-LPS-CJB, 2015 WL 12806483 (D. Del. Apr. 21, 2015), *report and recommendation adopted*, No. CV 11-515-LPS-CJB, 2015 WL 3622897 (D. Del. June 9, 2015)
  ................................................................................................................................30

*Withrow v. Spears*,
  967 F. Supp. 2d 982 (D. Del. 2013) ........................................................................16

# I.    INTRODUCTION

Microsoft attempts to portray IPA's infringement theories as identical to those presented in the Amazon matter. Indeed, it is the opposite. Microsoft's lead purported non-infringement argument relies on repudiating the very claim construction upon which Amazon prevailed. Moreover, Microsoft's argument ignores that these cases involve different technology, source code, and products, and that this Court provided additional claim construction guidance after the Amazon matter concluded.

Beyond that, Microsoft's Motion presents no case-specific infringement issues suitable for summary disposition. IPA's expert, Dr. Medvidovic, demonstrates that Cortana's ███████████ components practice the claimed "service request" limitation. His analysis stands in stark contrast to Microsoft's strawman argument that Dr. Medvidovic should have pointed to the ████████████████████████ Microsoft's creation of a strawman for this limitation is not a sufficient basis for summary judgment of noninfringement. With respect to the "compound goal" limitation of the '115 Patent claims, Dr. Medvidovic testified that Cortana's ██████ directly align with the Court's construction for the claimed "compound, arbitrarily complex base goal." Microsoft's disagreements with Dr. Medvidovic—at best—identify potential fact disputes that can only be resolved by a jury, not summary judgment.

Separately, Microsoft's attempt to exclude certain of Dr. Medvidovic's opinions falls flat because he thoroughly described and explained how Cortana meets each element of the asserted claims. Such testimony includes the "scheduling based on reasoning" limitation of the '560 Patent claims, which Dr. Medvidovic thoroughly analyzed in his Opening Report, and then addressed Microsoft's critiques in his Reply Report. Microsoft all but acknowledges the sufficiency of Dr. Medvidovic's infringement analysis when it concocts a nonsensical argument

that Dr. Medvidovic's opinions should all be excluded, despite Microsoft failing to even acknowledge the existence of one of the direct infringement theories Dr. Medvidovic analyzed.

Microsoft's attempt to exclude the opinions of IPA's damages expert, Mr. Kennedy, fares no better. Mr. Kennedy specifically accounted for Microsoft's use of the benefits of the Asserted Patents, citing television commercials aimed at selling more Windows 10-enabled products that enable users to make requests of Cortana. Similarly, Microsoft's effort to discredit IPA's survey expert fails. Dr. Reed-Arthurs proved the reliability of her willingness-to-pay calculations using well-accepted methodology backed by economic literature. Microsoft's Motion should be denied in its entirety.

## II.     ARGUMENT

### A.     Microsoft's Cortana Practices the "Service Request" Limitation of the Asserted Claims

#### 1.     Cortana's Service Requests are Recited in the Claimed ICL

##### a.     Dr. Medvidovic addressed the "recited in" portion of the Court's construction.

In reaching its opinion that the service request must "be recited in the claimed ICL and meet every requirement of the claimed ICL," this Court previously noted that "[e]ach asserted claim also requires ***a service request expressed in the ICL***."[1] (*IPA Techs. Inc. v. Amazon.com, Inc.*, Civil Action No. 16-1266-RGA (D.I. 405) ("Amazon MSJ Opinion"), 5.) By demonstrating that the alleged service request of Cortana meets every requirement of the claimed ICL and is "expressed in" the ICL, which Microsoft does not dispute, Dr. Medvidovic also showed that the service request is "recited in" the claimed ICL.

---

[1] Unless otherwise indicated, all emphasis added by IPA.

For the ███████████ Dr. Medvidovic opined that the claimed service request corresponds to ████████████,[2] that the claimed ICL corresponds to ██████ (Ex. 1 to Medvidovic Decl., ¶ 447), and further opined:

- ███████ *the service request **is expressed in** Cortana's interagent communication language* (ICL). (*Id.*, ¶ 381(d).)

- The "service request" of Cortana corresponds to the ████████ ... (*Id.*, ¶ 407.) ████████████████, which ***is represented by*** the ████████. One of the ████████ ████████████████████ ████████████████████ ████████████████████ (*Id.*, ¶ 414.)

- The service request ***adheres to*** the conversational protocol of Cortana's ICL because it follows the rules of ████████████████ ████████ define Cortana's conversational protocol. (*Id.*, ¶ 381(e).)

With respect to the ███████████, Dr. Medvidovic opined that the claimed service request corresponds to a ████████████, that the claimed ICL corresponds to ████████, and further opined:

- The service request ***adheres to*** the conversational protocol of Cortana's ICL because it is communicated among agents following the rules of ████████ ████████ (Ex. 1 to Medvidovic Decl., ¶ 98(e).)

- ***Using the ICL, the service request is transmitted within*** ████████████ ████████████████,

---

[2] In footnote 8, Microsoft asserts that the source code Dr. Medvidovic cited for ████████ is incorrect. But the cited code (MICROSOFT_SC_IPA_0000888-895) is the ████████, which is discussed in paragraph 381(g) of Dr. Medvidovic's report. (Ex. 1 to Medvidovic Decl., ¶ 381(g).) In the very next sentence of paragraph 381(g), Dr. Medvidovic describes the ██████ and cites to additional code, which includes ████████ ████████████████ which is found in MICROSOFT_SC_IPA_0000888. (*Id.*)

that participate in interpreting the service request to determine the *goal* of the user, as expressed in the service request. (*Id.*, ¶ 98(g).)

- ***Service requests***, goal, and other communications between agents ***take place in Cortana's ICL***. (*Id.*, ¶ 125.)

- The name Cortana uses for a service request is 
(*Id.*, ¶ 126.) Cortana receives

. (*Id.*, ¶ 138.)

- The 
(*Id.*, ¶ 141.)

By showing that the service request

is expressed in the ICL, implemented in ICL, uses the ICL, takes place in the ICL, adheres to the ICL, is represented in Cortana using

the ICL, and meets every requirement of the ICL, Dr. Medvidovic necessarily opined that the service request is "recited in" the ICL, satisfying the Court's construction.

### b. The Cortana functionality Dr. Medvidovic mapped to the claimed service request is recited in ICL.

Microsoft's argument that "[t]here is, therefore, no genuine dispute that the 'service requests' of the Accused Systems are not recited in the claimed ICL. . . ." (Motion, 13) is facially incorrect. IPA and Dr. Medvidovic have consistently asserted that the

are the Cortana functionalities that correspond to the claimed service request and that they are recited in and meet every requirement of the claimed ICL. (Ex. 1 to Medvidovic Decl., ¶¶ 119-173, 402-450.) But rather than address whether IPA's infringement theory meets the Court's construction, Microsoft manufactures a

strawman—it contends ███████████████████████ is the service request, and argues ██████████ cannot infringe because it is not "recited in the ICL." It makes no difference, however, whether ██████████ meets the Court's construction of service request—that is not the component IPA has accused of infringing the Asserted Patents.

Further, Microsoft alleges that "the 'service requests' of the Accused Systems – *i.e.*, what the user requested of the system – are not 'recited in the claimed ICL [*i.e.*, interagent communication language],' but are instead recited in the user's own words and natural language, *e.g.*, English." (Motion, 12.) But by referring to the "Fax it to Bill Smith's manager" example in the specification as a service request (Motion, 9), Microsoft acknowledges that the Cortana components Dr. Medvidovic mapped to the claimed service request mirror the example from the Asserted Patents. In doing so, Microsoft creates a circular argument it cannot win. If it is true, as Microsoft posits, that a service request is nothing more than the English words spoken by the user, then a service request could never be recited in ICL. That would nullify the very claim limitation at issue. It would also mean the "oaa_Solve((manager('Bill Smith', M), fax(it,M,[ ])), [strategy(action)])" representation of "Fax it to Bill Smith's manager," *which the patents teach is an ICL request* (Exh. A to Mahoney Decl., ('115 Pat.), 15:29-36)[3], is either not in ICL or not a service request.

If, on the other hand, Microsoft is correct that the "oaa_Solve((manager('Bill Smith', M), fax(it,M,[ ])), [strategy(action)])" statement, which indisputably contains more than the English words spoken by the user, *is* "the ICL representation of the user's request" (Motion, 9), then that

---

[3] To avoid filing duplicative exhibits, where possible, IPA cites to the exhibits attached to various declarations filed by Microsoft in support of its Motion. These exhibits bear letter identifiers, whereas the exhibits attached to IPA's declarations in support of this Opposition bear number identifiers.

statement is necessarily recited in the ICL and is a service request. In sum, either the service request is not limited to the English words of the user utterance (IPA's position, which is consistent with the Bill Smith's manager example in the specification) or the service request is limited to English words and therefore can never be in ICL (Microsoft's position, which contradicts the specification and the Court's construction).

2. **The Court Need Not Re-Construe "Service Request," But If It Chooses To Do So, the Court Should Adopt IPA's Proposed Construction.**

Microsoft contends that the claimed service request is nothing more than ████████ ████████████████████████████████, urging the Court to revisit claim construction so Microsoft can manufacture a non-infringement position *via* this new proposed construction. (Motion, 15.) The Court should not engage in additional claim construction for this term; in reaching his opinions, Dr. Medvidovic properly applied the Court's construction of "service request."

First, the Court need not revisit its construction of "service request" because it has already done so during the claim construction proceedings in this case. At that time, Microsoft sought to construe the term "sub-goal" to mean "one of multiple requests necessary to achieve a goal," arguing that "[i]n the context of the Asserted Patents, a 'goal' is a request for service." (D.I. 131, 11-12.) The Court rejected Microsoft's position, finding that "the intrinsic record reflects that '[g]oals and service requests are related, but distinct, concepts'" and "'[i]f a goal and a service request are viewed as the same entity, there would be no need to interpret one to yield the other,'" as the claim language requires. (D.I. 143, 6.) The Court also stated that: "The service request, as I understand it, expresses the goal. The goal is therefore a component of the service request, rather than the service request itself." (*Id.*, 7.)

By pointing to the ████████████ as the service request in his infringement analysis, Dr. Medvidovic recognized and applied the Court's findings. On the other hand, under Microsoft's theory, a service request that does nothing more than repeat the English words of the user's utterance cannot be said to completely express the user's goal in every situation. For example, if a user says "order pizza," and the service request contains nothing more than the English words "order" and "pizza," that does not automatically express the goal of receiving a pizza. The words of the user's utterance include no additional information to help the system determine, for example, if the user wants a pizza delivered to his house, to someone else's house, to organize a series of photos of pizza, or an entirely different goal. A service request that contains nothing more than the words of the user's utterance does not necessarily express a goal.

Second, along the same lines, the Court has instructed that the service request must be recited in the claimed ICL and meet every requirement of the claimed ICL. (D.I. 143, 4.) If a service request contains nothing more than English words (such as "order pizza"), by definition, the service request cannot be recited in an ICL (it is recited in English), nor can it meet every requirement of an ICL (it meets the requirements of the English language instead). Microsoft's proposal is fatally circular—a service request must only contain English words, but a service request that contains only English words cannot infringe under the Court's present construction.

In fact, under Microsoft's proposed construction, no service request, ***including the service request expressly disclosed in the specification of the Asserted Patents***, could ever infringe. For example, in the "Fax it to Bill Smith's manager" example discussed above, the system derives the following ICL representation of the user's request: "oaa_Solve((manager('Bill Smith', M), fax(it,M,[ ])), [strategy(action)])." (Exh. A to Mahoney Decl. ('115 Pat.), 15:24-33.) This ICL request contains the English words of the request, but it also contains additional components related to the request. For example, the above ICL request includes the global

parameter "[strategy(action)]," which is not a part of the user's utterance. This example is consistent with Dr. Medvidovic's analysis of Cortana's  Under Microsoft's proposal, on the other hand, the patents' own example of a service request would not qualify as a service request.

Third, Microsoft's proposed new construction would nullify limitations of the asserted claims. Asserted Claim 29 of the '115 Patent, for example, requires "interpreting a service request in order to determine a base goal." Microsoft never explains how its version of a service request ███████████████████████████████ could be interpreted to determine a base goal. That is because, under Microsoft's proposed construction, there would be nothing to interpret. The English words "order" and "pizza" are just that— individual English words with no hints as to context, processing, or instructions for meeting the user's goal.[4]

Fourth, Microsoft attempts to bolster its position by arguing that Dr. Medvidovic has admitted that a service request is nothing more than the words of a user's utterance. (Motion, 16.) But the deposition testimony Microsoft selectively cites is taken out of context and does not even include the question Dr. Medvidovic was responding to.[5] Reading the testimony in its entirety, it

---

[4] Several dependent claims stemming from claim 29 recite additional requirements for receiving, converting, and processing the service request. (*See* Ex. A to Mahoney Decl. ('115 Pat.), cls. 34-36.) Microsoft's proposed construction would also render these dependent claims meaningless.

[5] "Q    Well, I think it's completely disputed, but putting that aside, let me make sure I understand what you are trying to say here. ***You're not going to say that <u>Microsoft calls</u>*** ███ ██████████ ***a service request, are you?***
       A    I do not think that if we were not here. If you walked up to a Microsoft engineer -- ***if we were not part of this case, and you walked up to a Microsoft engineer and said, "Hey, when a human makes a service request of Cortana, what do you call that?" I do not think that they would be able to dispute that that's*** ███████████████ ***I would have to disagree with you.*** I don't think that there's any dispute that service request, which is something that a human asks of Cortana or that a skill may ask of another skill, perhaps, but certainly something that a human

8

becomes clear that Dr. Medvidovic was responding to a question about whether ***Microsoft*** uses

the "service request" terminology for its own products. Dr. Medvidovic maintained his opinion

that ███████████ of Cortana corresponds to the claimed service request. Nowhere in his

deposition (or elsewhere) did Dr. Medvidovic testify that a service request is limited to the words

of a user utterance.

Microsoft also relies on a single sentence in the Amazon MSJ Opinion in an attempt to

show that Dr. Medvidovic previously took the position that a service request is nothing more than

a user utterance. (Motion, 16.) However, the paragraphs of Dr. Medvidovic's opening report the

Court cited in its opinion do not equate the user utterance with the service request, nor does Dr.

Medvidovic state that opinion in any other location in his reports. Further, Microsoft and its

expert, Dr. Lieberman, have never viewed Dr. Medvidovic's expert reports in the Amazon case,

because those reports contain highly confidential, Amazon-proprietary materials. (*See* Ex. 4 to

Olin Decl., 157:13-19.) Regardless, Dr. Medvidovic did not opine in the Amazon case (nor has

he in this case) that the service request is the words of the user's utterance and nothing more.

Along the same lines, Microsoft attempts to analogize Dr. Medvidovic's infringement

theories from the Amazon case to his infringement theories here, insinuating that because the

Court found no infringement in Amazon, it must make the same finding for Microsoft. (Motion,

14.) But that is not how patent cases work. Microsoft fails to mention that the Court reached its

opinion in the Amazon case ***before*** providing its construction for "service request." And, whether

an individual defendant infringes is a question of fact that depends on an independent analysis of

each individual defendant's unique technology and accused products. *See, e.g.*, *Apple Inc. v.*

requests of Cortana, if we agree that that's a service request, Cortana handles that through ███
███████ The - in my understanding, what you're disputing here is that I'm using the term
"service request" because that is the language of the 115 patent, not the essence of the argument
here." (Exh. G to Mahoney Decl. (Medvidovic Dep.), 69:20-70:17.)

*Samsung Elecs. Co. Ltd.*, 839 F.3d 1034, 1040 (Fed. Cir. 2016). Further, the summary judgment dispute in the Amazon case related to whether the components IPA identified as the service request "adhered to" the ICL. (Amazon MSJ Opinion, 5.) Here, Microsoft does not dispute that ██████████████████ adheres to the ICL and does not argue with Dr. Medvidovic's analysis on this point.

Finally, as discussed above, the Court has previously acknowledged that a service request is an expression of a goal (D.I. 143, 7). If the Court decides to engage in further construction of this claim term (which IPA believes is unnecessary), IPA urges the Court to construe service request to mean "a request that includes an expression of a goal," which is consistent with the Court's findings during claim construction proceedings.

### 3.     Cortana's ███████████ are the Claimed Service Request



████████████████████████████████████████ (Ex. 1 to Medvidovic Decl., ¶¶ 170, 447.) ███████████████████████████████ that kicks off the processes required to meet the user's goal. (*Id.*) As Microsoft acknowledges, the ██████████████████████████████████████

███████████████████████████████████

███████████████████ (*Id.*, ¶¶ 171, 448.) ███████████████████

███████████████████████████████████

███████████████████████████ (Motion, 13.)

For example, if a user asks Cortana to "order pizza," █████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████

Limiting the service request to ███████████████ would not enable the system to derive a base goal to be fulfilled, which is the primary purpose of the invention of the asserted claims. The English words "order pizza," without context as to the user speaking those words or the device the user is ordering from, could, for example, result in a pizza being ordered for pick-up, a pizza being delivered to one person's house when it is another person who set the order, or a series of pictures of pizza being put "in order." These would all be proverbial shots in the dark by Cortana. The purpose of ████████████████████████████████████████ ██████████████████████████████████████████████████████████ ███████████████████.

Microsoft does not address Dr. Medvidovic's actual opinions on how the ████████████████ satisfy the Court's construction of "service request," preferring instead to create a strawman that has no connection to the Court's construction. Microsoft's Motion should be denied.

**B.     Microsoft's Cortana Practices the "Compound Goal" Limitation of the Asserted Claims**

**1.     Dr. Medvidovic Shows That an ████████ is a Single-Goal Expression Comprising Multiple Subgoals**

Microsoft contends that IPA has no evidence that Cortana's ████████ meet the Court's construction of a "compound goal" because Dr. Medvidovic never analyzed how an ████████ of the ███████████████ can be a single-goal expression comprising multiple subgoals. (Motion, 17.) Microsoft is wrong.

Dr. Medvidovic established in his opening report that an ████████ is a "single-goal expression," explaining that "Cortana works ████████████████████████████████████████ ███████████████████████████████████████████" (Ex. 1 to Medvidovic Decl., ¶ 105.) Dr. Medvidovic also opined that ████████████████████████ (*Id.*, ¶¶ 109, 127), specifically

connecting ██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████

Dr. Medvidovic also explained why a single-goal expression, like ████████

███████████ comprises multiple subgoals. (Ex. 2 to Medvidovic Decl., ¶¶ 69-70). He used an

example from the specification of the '115 Patent to illustrate. In this example, a user requests to

play a message ("PLAY IT") that has multiple subparts in different formats, such as audio and

web-based formats. (*Id.*, ¶ 69, citing '115 Pat., 24:31-39.) Dr. Medvidovic explained that

"'PLAY IT' is interpreted by the system to determine a base goal that is a compound, arbitrarily

complex goal. It includes multiple subgoals and the substantive equivalent of logical connectors

because it means 'Play Part 1 of the message AND play Part 2 of the message.'" (*Id.*, ¶ 70.) As

Dr. Medvidovic opined elsewhere in his Reply Report, "if a base goal *requires* multiple subgoals

to be fulfilled, it also, by definition *includes* those subgoals." (*Id.*, ¶ 62.) Likewise, ██████

███████████████████████████████████████████████████ require multiple

subgoals, and are thus compound.

Microsoft's expert, Dr. Lieberman, did not dispute that ████████████████████████

███████ First, he acknowledged that multiple steps were required to fulfill a base goal in the

"play it" example:

> Q. Okay. Playing each part of that message, even one is -- even if one is in
> text to and the other is not in text to speech, those are both in service of
> fulfilling the goal to play the message; right?
>
> …
>
> A. Yes.



(Ex. 4 to Olin Decl., 217:19-25.) Dr. Lieberman also admitted that a goal expression like "'Fax it to Bill Smith's manager' may require multiple sub-goals." (Ex. A to Lieberman Decl. (Lieberman Report), ¶ 162.) And, Dr. Lieberman agreed that logical connectors (such as AND, OR, NOT) need not be express; they can be implied. (Ex. 4 to Olin Decl., 50:4-6).

Unable to overcome Dr. Medvidovic's compelling evidence showing that ███████ ████████████████████ Microsoft seeks to rewrite the Court's claim construction to sidestep that evidence. The Court previously construed the term "compound goal" to mean "a single-goal expression comprising multiple subgoals." (D.I. 143 at 5.) Microsoft alleges that Dr. Medvidovic "ignores the word 'expression' in the Court's interpretation" (Motion, 17) and claims summary judgment is proper because IPA allegedly has not identified a single-goal expression "that *expressed* multiple sub-goals." (Motion 19.) But the Court's construction does not require a single-goal expression that includes multiple subgoal expressions. It merely requires a single-goal expression ***comprising*** multiple subgoals, which is exactly what Dr. Medvidovic analyzed.

### 2. Dr. Medvidovic Shows That an ████████ Is an Arbitrarily Complex Base Goal

Microsoft asserts that the Court's construction for "arbitrarily complex base goal" requires a language where "multiple sub-goals can actually be 'expressed' as part of the base goal." (Motion, 18). Here again, Microsoft attempts to rewrite the Court's claim construction to craft a non-infringement position. Its argument conflicts with the Court's actual construction, which provides for "a single goal expression expressed in a language or syntax ***that allows multiple sub-goals*** and potentially includes more than one type of logical connector (e.g., AND, OR, NOT), and/or more than one level of logical nesting (e.g., use of parentheses), ***or the substantive equivalent***." (D.I. 143 at 5.) As with "compound goals," Microsoft manufactures a

new requirement for "sub-goal expressions," even though the construction only requires "sub goals." (Motion, 18.) Microsoft also ignores the clause allowing for a substantive equivalent.

Applying the Court's actual claim construction, Dr. Medvidovic established how Cortana handles compound, arbitrarily complex base goals. (Ex. 1 to Medvidovic Decl., ¶¶ 131-144). Specifically, he showed how ███████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ █████████████████████████████████████████████████ ██████████████████████████████████████████ █████████████████████████████████████████████ ██████████████████████████████████████ (Ex. 2 to Medvidovic Decl., ¶¶ 67-70). Microsoft's argument also fails given that its own technical expert admitted that logical connectors can be implied. (Ex. 3 to Olin Decl., 50:4-6.).

Although Microsoft cites Mr. Maly's expert report for the proposition that ████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████ and it is limited to a single example scenario identified by Mr. Hamaker, Microsoft's Rule 30(b)(6) witness. (Exh. A to Maly Decl. (Maly Report), ¶¶ 95-98.)

According to Mr. Hamaker, ████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████

██████████" (Ex. 5 to Olin Decl., 204:16-205:3). Another Microsoft 30(b)(6) witness, Mr. Albrecht, confirmed that ████████████████████████ (Ex. 6 to Olin Decl., 127:23-128:2). The ████████ example is therefore not a "hypothetical," as Microsoft erroneously asserts. (Motion, 20). Instead, it is evidence in the form of a testimonial admission from a Microsoft corporate witness, which in and of itself is sufficient to defeat a summary judgment motion. *See, e.g., MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*, 199 F. Supp. 3d 818, 836 (S.D.N.Y. 2016) (conflicting testimony raises triable issue of fact).

### C. Microsoft's Cortana Practices the "Scheduling" Limitation of the Asserted Claims

Microsoft erroneously asserts that IPA's infringement expert "fails to address" how the ████████████ meets "the 'using reasoning … to co-ordinate *and schedule* efforts' language of claims 50 and 53" of the '560 Patent. (Motion, 21) (emphasis added by Microsoft). That assertion is wrong because, in mapping claims 50 and 53[6] to the ████████████ Dr. Medvidovic first identified the types of reasoning that Cortana uses to co-ordinate and schedule efforts by incorporating his analysis on reasoning set forth for claim 29[iv](b) of the '115 Patent. There, he opined on domain-independent coordination strategies ████████████████ ████████████████████████████████, domain-specific reasoning ████████████████████████████████████, and application-specific reasoning. Dr. Medvidovic reiterated that such reasoning is used to schedule efforts by skills, and further established that ████████████████████████████ ████████████████████████████" (Ex. 1 to Medvidovic Decl., ¶ 328). ████████████ shows that the skills are both identified *and* scheduled to fulfill sub-

---

[6] Dr. Medvidovic incorporates his analysis of claim 50 into claim 53 for this limitation at paragraph 345 of his opening report. Asserted Claim 54 depends from claim 53.

goal requests using reasoning. He then showed in detail how ███████████████

████████████████████████████████████████████████████████

███████ (*Id.*, ¶ 332.) Dr. Medvidovic further established that:

███████████████████████████████████████████████

(Ex. 2 to Medvidovic Decl., ¶ 145.)

Microsoft complains that such evidence is somehow "new." (Motion, 22.) But, "[a]

rebuttal or reply expert report is proper if the intent of the report is solely to contradict or rebut

evidence on the same subject matter identified by the opposing party's expert report" and "may

cite new evidence so long as the new evidence and data is offered to directly contradict or rebut

the opposing party's expert." *Withrow v. Spears*, 967 F. Supp. 2d 982, 1001-02 (D. Del. 2013). In

his Opening Report, Dr. Medvidovic identified ████████████████████████████

████ (Ex. 1 to Medvidovic Decl., ¶¶ 328, 332.) He also opined on ████████████████

████████████████████████ in his analysis for claim 29[iv](b) of the '115 Patent and

incorporated that content into his analysis for claims 50, 53, and 54 of the '560 Patent. (*Id.*, ¶¶

224-28, 325, 326, 328.) Since he did nothing more in his reply report than clarify his analysis and

rebut the arguments made by Dr. Lieberman in his report (*see* Exh. A to Lieberman Decl., ¶¶

365-371), Dr. Medvidovic's discussion of the "scheduling" limitation is entirely proper.[7]

Addressing the '560 Patent claims for the ████████████████ Dr. Medvidovic again

identified the reasoning used to coordinate and schedule efforts by pointing to his analysis of

---

[7] As of the date of this filing, Microsoft has not moved to strike the subject portions of Dr.
Medvidovic's Reply Report.

claim 29[iv](b) of the '115 Patent. There, he named domain-independent coordination strategies
████████████████████████████████████, domain-specific reasoning █████████████████
█████████████████████, and application-specific reasoning ███████████████████████████
██████████████████████████████. (Ex. 1 to Medvidovic Decl., ¶¶ 492-496).

Dr. Medvidovic further showed how that reasoning is used in the ████████████████ "to
*coordinate and schedule* efforts by the skills …" (*Id.*, ¶ 603.) Among other things, Dr.
Medvidovic analyzed how Cortana ████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████ (*Id.*, ¶¶ 600-606.)

Dr. Medvidovic fully addressed and established that Cortana practices the "scheduling"
limitation of all Asserted Claims of the '560 Patent for both the ███████████████████████
The Court should reject Microsoft's request for summary judgment.

**A.     IPA's Direct Infringement Theories are Legally Sound**

**1.     IPA Has Shown That Microsoft Directly Infringes When ████████
████████████████████**

In his Summary of Opinions, Dr. Medvidovic opined:

Microsoft directly infringes the Asserted Claims when Microsoft makes, uses,
sells, and/or offers for sale in the United States █████████████████████████
███████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████

███████████████████████████████████████████████████

(Ex. 1 to Medvidovic Decl., ¶ 75.) In limiting its "no direct infringement" attack to the first theory listed in paragraph 75 (Motion, 7-9), Microsoft completely ignores the second. And Dr. Medvidovic provided ample support for the theory that Microsoft directly infringes when ████

████████████████████████████████████████████████████

Dr. Medvidovic summarized the general process by which Cortana fulfills user requests (Ex. 1 to Medvidovic Decl., ¶ 98 ████████; ¶ 381 ████████), then walks through each step in detail, including source code analysis where relevant. (*Id.*, ¶¶ 82-349 ████████; ¶¶ 366-623 ████████.) And Microsoft admits that Dr. Medvidovic analyzed "software running and operations occurring ████████████████ (Motion, 7.) Because Microsoft did not request summary judgment on IPA's second direct infringement theory (or even acknowledge its existence), and has provided no evidence or argument countering Dr. Medvidovic's analysis related to this theory, summary judgment (and *Daubert*) is not appropriate for this theory.

### 2. Cortana Is Part of Microsoft's Windows 10 Operating System

It is undisputed that the only way for a user to access Cortana and for Microsoft to deploy Cortana is through client devices running Windows 10, into which Cortana is embedded. As explained below, IPA properly derived its reasonable royalty base from Microsoft's sales of Windows 10 licenses because Cortana is part of the Windows 10 operating system and Microsoft does not sell Cortana separately from that operating system (or the client devices loaded with Windows 10). Microsoft's direct infringement of the asserted claims occurs and is capable of occurring ████████████████████████████████████████

The preamble of Asserted Claim 29 of the '115 Patent reads in relevant part: "A computer program stored on a computer readable medium, the computer program executable to facilitate

cooperative task completion within a distributed computing environment . . . the computer program comprising computer executable instructions for . . . ." In his opening report, Dr. Medvidovic explained that a distributed computing environment means "various components are spread across multiple computers and servers." (Ex. 1 to Medvidovic Decl., ¶ 88.)

A depiction of Cortana's distributed computing environment, taken from Microsoft's documentation, is provided in paragraph 89 of Dr. Medvidovic's report and reproduced here:



(Ex. 2 to Olin Decl., 00000015.)[8] The ████████████████████████████████
████████████████████████████████████████

████████████████████ As Dr. Medvidovic explained, the ██████████████████
████████████████████████████████████████

---

[8] As explained in paragraph 89 of Dr. Medvidovic's report, the ████████████████
████████████████████████████████████████

[black redaction bars] (Ex. 1 to Medvidovic Decl., ¶ 89.)[9] As such, Microsoft directly infringes because Microsoft itself makes, uses, sells and licenses the technology claimed in the asserted claims [black redaction bar]

Finally, Microsoft cannot apply its "no direct infringement" argument to the Asserted Claims of the '560 Patent. Microsoft acknowledges that each of these claims is a method claim. (Motion, 4 n. 2.) Method claims are infringed when the claimed method is performed. *See Ormco Corp. v. Align Tech., Inc.,* 463 F.3d 1299, 1311 (Fed. Cir. 2006). Dr. Medvidovic set forth a full infringement analysis for these claims, and Microsoft does not contest that it performs all the steps of the claimed methods—and does so when [black redaction bar] [black redaction bar] IPA has therefore established direct infringement for the method claims.

**B.     Mr. Kennedy's Expert Opinion on Damages is Admissible**

Mr. Kennedy is a well-respected expert in economics with a long history of testifying in patent infringement matters. (Ex. 1 to Kennedy Decl., Appendix C). As set forth below, Microsoft fails to show that exclusion of Mr. Kennedy's testimony on damages is warranted.

**1.     Summary of Mr. Kennedy and Dr. Reed-Arthurs' Damages Analyses**

To calculate damages in the instant matter, Mr. Kennedy relied in part on the [black redaction bar] [black redaction bar]

---

[9] While the above analysis relates to the [black redaction bar] of the Cortana software, Dr. Medvidovic's opinions regarding these elements are equally applicable to his opinions for the [black redaction bar] (*See* Ex. 1 to Medvidovic Decl., ¶¶ 367-380.)

████████████████████████████████████████████ (Ex. 1 to Kennedy Decl., ¶¶ 236-237). "[I]t is common in technical fields for an expert to base an opinion in part on what a different expert believes on the basis of expert knowledge not possessed by the first expert." *Dura Automotive Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 609-13 (7th Cir. 2002).

Under Approach A, ████████████████████████████████████████ ████████████████████████████████" (Ex. 1 to Kennedy Decl., ¶ 237.)

Under Approach B, ███████████████████████████████████████

████████████████████████████████████████████

███████████████ (*Id.*) Mr. Kennedy and Dr. Reed-Arthurs then agreed that Dr. Reed-Arthurs' ████████████ under Approach A and B should be adjusted to account for the ████████

████████████████████████████████████████

████████ (*Id.* ¶¶ 239-242.) Mr. Kennedy then took ████████████████████████

████████████████████████████████████████████

████ (*Id.*, Exhibits. 1, 1A.)

### 2. Microsoft Directly Infringes the Asserted Patents

Microsoft claims that "Dr. Medvidovic does not read any element of any asserted claim on any Windows 10 code or operation. Nonetheless, Mr. Kennedy assumes, without more, that the sale of Windows 10 is a direct infringement and accordingly assesses a per unit royalty on each sale for consumer computers." (Motion, 25.) As set forth above (Section D), Microsoft is mistaken regarding Dr. Medvidovic's infringement read.[10] Moreover, Mr. Kennedy correctly

---

[10] Microsoft also claims that "IPA's entire damages claim relies on ████████████████ ████████████" In reality, Mr. Kennedy explained that SRI ██████████ ████████████████████████████████████████ (Ex. 1 to Kennedy Decl., ¶419).

states that Microsoft directly infringes ████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████████ (Ex. 1 to Kennedy Decl., ¶ 35(b).) And the

Cortana-Capable Product is Windows 10, which Microsoft distributes and profits from through

Windows 10 licenses. (*Id*. ¶ 240.) Mr. Kennedy takes the ████████████████████████

███████████ from Dr. Reed-Arthurs and applies the █████████████████████████

█████████████████████████████████████████████████████████████ that

Microsoft sells. (*Id*. ¶¶ 239-242.) In addition, as set forth below in Section F, █████████████

██████████████████████████████████████████████████

Further, courts have frequently held that proof that an infringer designed a product to be

used in an infringing manner and instructed users on the same can be sufficient to demonstrate

direct infringement. *See Purewick Corp. v. Sage Prod., LLC*, No. CV 19-1508-(MN), 2023 WL

2734418, at *4 (D. Del. Mar. 31, 2023), *appeal dismissed*, No. 2023-1868, 2023 WL 4230367

(Fed. Cir. June 28, 2023). In *Purewick*, a medical device manufacturer sought to overturn a jury

verdict finding direct infringement of the patents at issue. *Id*. at *1-2. The manufacturer argued

that the patentee "must show 'specific instances of direct infringement'" and had failed to do so.

*Id*. The court disagreed, finding that "'where an alleged infringer designs a product for use in an

infringing way and instructs users to use the product in an infringing way, there is sufficient

evidence for a jury to find direct infringement.'" *Id*. (citing *C.R. Bard Inc. v. AngioDynamics,

Inc.*, 979 F.3d 1372, 1379 (Fed. Cir. 2020)); *see also Toshiba Corp. v. Imation Corp.*, 681 F.3d

1358, 1365 (Fed. Cir. 2012) (same).

Here, Dr. Medvidovic established at least that Microsoft's making and using the claimed

system, and users using the claimed system, directly infringes the Asserted Patents. Moreover,

Mr. Kennedy stated, "I understand that Microsoft induces infringement of one or more of the

Asserted Claims by selling Cortana-Capable Products with advertising and instructions to users of Cortana on how to use Cortana to infringe the Asserted Claims." (Ex. 1 to Kennedy Decl., ¶ 36.) Specifically, the record is replete with examples of Microsoft instructing consumers—through speeches, interviews, blog posts, and television commercials—on how to use the Accused Products in an infringing manner. (Ex. 1 to Kennedy Decl., ¶¶ 64 (citing Ex. 8 to Olin Decl.); 65 (citing Ex. 8 to Olin Decl.); 66 (citing Ex. 9 to Olin Decl.); 69 (citing Ex. 10 to Olin Decl.); 70 (citing Ex. 11 to Olin Decl.); 120 (citing Ex. 12 to Olin Decl.); 123 (citing Exs. 13 to Olin Decl.). *See also* Ex. 2 to Kennedy Decl., ¶¶ 51 (citing Ex. 10 to Olin Decl.); 53 (citing Ex. 14 to Olin Decl.); 54 (citing Ex. 15 to Olin Decl.); 55 (citing Ex.16 to Olin Decl.); 56 (citing Ex. 17 to Olin Decl.); 57 (citing Ex. 18 to Olin Decl.). *See also* Ex. 3 to Kennedy Decl., ¶ 79 (citing Exs. 17 and 19 to Olin Decl.). *See also* Ex. 1 to Reed-Arthurs Decl., ¶ 54 (citing Exs. 29 and 21 to Olin Decl.). *See also* Ex. 2 to Reed-Arthurs Decl., ¶ 41 (citing Ex. 22 to Olin Decl.). For example, in a Microsoft national television commercial for Windows 10 entitled, "Meet the Bug Chicks," which began airing in February 2016, a science blogger is seen interacting with Windows 10 on her PC. She says, "Hey Cortana, find my katydid video." Cortana understands what file she is referring to, finds the file, and plays a video of a bug, to which the blogger responds, "Oh, so good." (Ex. 19 to Olin Decl.)

Finally, Microsoft's claim that Mr. Kennedy cannot rely on Dr. Medvidovic's statements "as a basis for his own opinions" (Motion, 25) is also incorrect. Courts have previously recognized that Dr. Becker, Microsoft's own damages expert, "was entitled to rely upon Dr. Jaeger's technical analysis when constructing his damages model and presenting it to the jury, and the jury was free to judge the credibility of both experts." *TQP Dev., LLC v. 1-800-Flowers.com, Inc.*, No. 2:11-cv-248-JRG, 2015 WL 6694116, at *4 (E.D. Tex. Nov. 3, 2015);

*Shire Viropharma Inc. v. CSL Behring LLC*, No. CV 17-414, 2021 WL 1227097, at *10 (D. Del. Mar. 31, 2021) (denying motion to exclude based on expert's reliance on the work of others).

### 3. Mr. Kennedy Is Not Required To Rely On ███████████ When Calculating a Reasonable Royalty

Microsoft further claims that Mr. Kennedy "included no basis for assessing a royalty based on ████████████████████████████████████████████████████ ████ (Motion, 26). Microsoft's arguments regarding usage are flawed for several reasons.

*First*, the Federal Circuit has affirmed that patent damages are not limited to actual infringing use. *See Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 1 F. App'x 879, 884 (Fed. Cir. 2001) (plaintiffs asserting method claims are not required to "demonstrate a one-to-one correspondence between units sold and directly infringing customers"); *Intellectual Ventures I LLC v. Symantec Corp.*, 234 F. Supp. 3d 601, 610-11 (D. Del. 2017) (denying summary judgment despite defendant's demand that the plaintiff "quantify the number of customers" who used the infringing features), *aff'd*, 725 F. App'x 976 (Fed. Cir. 2018).

*Second*, the Federal Circuit has also held that, aside from actual usage, value can be found from merely having a patented feature available for use. For instance, in *Lucent Techs., Inc. v. Gateway, Inc.*, the defendant argued that "for method claims . . . damages [must] be limited to the proven number of instances of actual infringing use." 580 F.3d 1301, 1323-24 (Fed. Cir. 2009). The Federal Circuit disagreed, explaining that it has "never laid down any rigid requirement that damages in all circumstances be limited to specific instances of infringement proven with direct evidence." *Id*. at 1334. That rule would be "far-removed from what parties regularly do during real-world licensing negotiations," in which the value of a technology is not "limited to the number of times a patented feature is used by a consumer" but also includes the value of "having the patented invention available for use." *Id*.; *cf Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d

1075, 1080 (Fed. Cir. 1983) (affirming reasonable royalty based on availability of snowmaking machinery, not "actual use").

Here, as explained above, there is ample evidence of Microsoft using the benefits of the Asserted Patented in presentations, articles, and television commercials to increase sales of Windows 10. Moreover, Microsoft's employee, James Howell, testified that commercials

███████████████████████████████████████████████████████████████████

> Q. Okay. And in terms of the key features that you wanted advertised, how would you go about selecting those features?

> A. Well, the first -- █████████████████████████
> ████████████████████████████████
> ██████████████████████████████████████████

(Ex. 23 to Olin Decl., 75:7-25). Furthermore, Dr. Reed-Arthurs establishes the value of

the patented features through her ████████████ (Ex. 1 to Reed-Arthurs Decl., ¶¶44-155).

*Third,* Microsoft's claim that ████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████ (Motion, 27) is wildly inaccurate. Microsoft cites Dr. Reed-Arthurs'

statement that ████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████████ (Ex. 2 to Reed-

Arthurs Decl., ¶ 47.) Then, in a footnote to that sentence, Dr. Reed-Arthurs clearly states:



MICROSOFT_IPA00021046 at slide 6.

(*Id.*, n. 82.) Mr. Kennedy also explains in further detail why Microsoft's ███████████ was flawed. (Ex. 2 to Kennedy Decl., ¶¶ 93-100.) In addition, Dr. Becker admitted during his deposition that ████████████████████████████████████ (Ex. 24 to Olin Decl., 173:9-174:11.) Assuming, *arguendo*, that Microsoft could establish that ████████ ████████████████████████████████ that factor alone is not dispositive.[11] *See SRI Int'l, Inc. v. Cisco Sys., Inc.*, 254 F. Supp. 3d 680, 714-15 (D. Del. 2017) (allowing all sales to be included in royalty base despite evidence that about one-third of customers did not use the patented feature), *aff'd in relevant part*, 930 F.3d 1295 (Fed. Cir. 2019).

### 4. Mr. Kennedy Does Not Violate the Entire Market Value Rule

Microsoft incorrectly claims that Mr. Kennedy's reliance on ████████████████ ████████ violates the entire market rule ("EMVR"). (Motion, 26). But, "[t]he EMVR applies when an expert performs no apportionment, instead using the entire value of a product as the royalty base." *Rembrandt Social Media, LP v. Facebook, Inc.*, 22 F. Supp. 3d 585, 593 (E.D. Va. 2013). A damages expert's royalty base selection does not implicate the EMVR where the expert has apportioned the profits earned on the accused product between the patented and unpatented features because "the entire market value rule is an exception to the rule requiring apportionment." *Sloan Valve Co. v. Zurn Indus., Inc.*, 33 F. Supp. 3d 984, 991 (N.D. Ill. 2014).

Further, merely using the "full expected retail price" of the accused product as an "input" in a damages calculation "does not invoke the entire market value rule." *Biscotti Inc. v. Microsoft Corp.*, No. 2:13-CV-01015-JRG-RSP, 2017 WL 2536962, at *6 (E.D. Tex. May 18, 2017); *see*

---

[11] Microsoft will inevitably argue that ████████████████████████████████ ████████████████ But that fact, even if true, would only make Dr. Reed-Arthurs' ████████████████████████████

*also Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, No. 09-290, 2012 WL 3679564, at *4 (W.D. Pa. Aug. 24, 2012) ("[A]n apportionment analysis needs to start somewhere, and simply starting with the total operating profit does not inherently invoke the entire market value rule"); *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014) ("It is not that an appropriately apportioned royalty award could never be fashioned by starting with the entire market value of a multi-component product—by, for instance, dramatically reducing the royalty rate to be applied in those cases.").

Here, Mr. Kennedy █████████████████████████████████████████████████████ ████████████████████████████████████████ (Ex. 1 to Kennedy Decl., ¶¶ 423-425, Exhibit 1; Ex. 2 to Kennedy Decl., ¶¶ 13, 108), which is inherently ████████████████████ ████████ *See Saavedra v. Eli Lilly & Co.*, No. 2:12-CV-9366-SVW, 2014 WL 7338930, *4 (C.D. Cal. Dec. 18, 2014) ("Conjoint analysis is a statistical technique capable of using survey data to determine how consumers value a product's individual attributes—often called the market's willingness to pay.").

Microsoft argues nonetheless that "[e]ven if [Kennedy] ████████████████████████ ████████████████████████████████████████████████████████████████████████████ ███████████████████████████████[12] (Motion, 27). Yet the Federal Circuit has recognized that "apportionment can be addressed in a variety of ways, including 'by careful selection of the royalty base to reflect the value added by the patented feature [or] … by adjustment of the royalty rate so as to discount the value of a product's non-patented features; or by a combination thereof." *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*,

---

[12] Microsoft's reliance on *Via Vadis, LLC v. Amazon.com, Inc.*, No. 1:14-CV-00813-LY, 2022 WL 23351, at *4 (W.D. Tex. Jan. 3, 2022) is misplaced. In *Via Vadis*, unlike here, there was no attempt to apportion the total sales to reflect the value of the patented feature. *Id.*

879 F.3d 1332, 1348 (Fed. Cir. 2018) (brackets and ellipsis in original) (quoting *Ericsson*, 773 F.3d at 1226). Therefore, there is "nothing inherently wrong with using the market value of the entire product [as a royalty base], especially when there is no established market value for the infringing component or feature, so long as the multiplier accounts for the proportion of the base represented by the infringing component or feature." *Id*. at 1339 (quoting *Lucent*).

## C. Dr. Reed-Arthurs' Expert Opinion is Reliable and Relevant

Microsoft fails to identify any aspect of Dr. Reed-Arthurs' survey and subsequent analysis that is so flawed as to warrant exclusion of her opinions. To the contrary, as set forth below, Dr. Reed-Arthurs' reports are fully supported by commonly accepted methodology and the evidence.

### 1. Microsoft Does Not Challenge Dr. Reed-Arthurs' Qualifications as an Expert or the Overall Methodology Used in Her Survey

Microsoft does not challenge Dr. Reed-Arthurs' exemplary expert qualifications. (Ex. 1 to Reed-Arthurs Decl., Attachment A.) Nor does Microsoft challenge the method that Dr. Reed-Arthurs employed, ████████████████████ which is a widely-used and accepted methodology for valuing characteristics of a product. *See, e.g., Odyssey Wireless, Inc. v. Apple Inc.*, 15-CV-01735-H-RBB, 2016 WL 7644790, at *9 (S.D. Cal. Sept. 14, 2016) ████████ ██████ is a generally accepted method for valuing the individual characteristics of a product"); *GlaxoSmithKline LLC v. Glenmark Pharms. Inc.*, No. CV 14-877-LPS-CJB, 2017 WL 8948975, at *8 (D. Del. May 30, 2017) *report and recommendation adopted*, No. CV 14-877-LPS-CJB, 2017 WL 2536468 (D. Del. June 9, 2017) ("Courts generally accept survey evidence that is reliable"); *Miller v. Fuhu Inc.*, No. 2:14-cv-06119-CAS-AS, 2015 WL 7776794, at *21 (C.D. Cal. Dec. 1, 2015) (same); *Microsoft Corp. v. Motorola, Inc.*, 904 F. Supp. 2d 1109, 1119-20 (W.D. Wash. 2012) (rejecting Microsoft's *Daubert* challenge to conjoint survey for calculating of royalty rates for infringing product's video decoding and Wi–Fi capabilities). Microsoft also does

not challenge the use of ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████ (Ex. 25 to Olin Decl., slide 14.) Indeed, Microsoft's employee, Kathleeen Magnuson,

testified that ███████████████████████████████████████████████████████████

████████████████████████████████████ (Ex. 26 to Olin Decl., 82:4-7.)

While Microsoft complains about specific aspects of Dr. Reed-Arthurs' ████████

████ was meticulously designed and executed, and any complaints go to the weight of the

████ not its admissibility. (Ex. 1 to Reed-Arthurs Decl., ¶¶44-155.) Numerous courts have

recognized that "no survey is perfect" and consequently "[t]he appropriate approach is to view

such evidence with an understanding of the difficulty of developing and implementing a survey

and to use any technical defects only to lessen evidentiary weight, not to reject the results out-of-

hand." *Marketquest Grp., Inc. v. BIC Corp.*, No. 11-CV-618-BAS (JLB), 2018 WL 1782724, at

*5 (S.D. Cal. Apr. 12, 2018); *see also Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 452 F.

Supp. 2d 772, 778 (W.D. Mich. 2006), *aff'd*, 502 F.3d 504 (6th Cir. 2007) ("Because almost all

surveys are subject to some sort of criticism, courts generally hold that flaws in survey

methodology go to the evidentiary weight of the survey rather than its admissibility"); *Viacom

Int'l v. IJR Cap. Invs., L.L.C.*, 891 F.3d 178, 197 (5th Cir. 2018) (same); *GlaxoSmithKline LLC*,

2017 WL 8948975, at *12 ("while Defendants have pointed out certain flaws in the methodology

of the Reisetter Survey, they go to the survey's weight, and may be adequately brought to the

jury's attention through cross-examination and via the testimony of Defendants' survey experts")

(citation omitted).

      **2.**    **Dr. Reed-Arthurs's ████████████████████████ Are Accurate**

Microsoft claims that Dr. Reed-Arthurs' ███████████████████████████████

████████████████████████████████████████████████████████████████████████

[REDACTED]." (Motion, 28).

Microsoft's claim regarding Dr. Reed-Arthurs' [REDACTED] are wrong for several reasons.

*First*, Dr. Reed-Arthurs explained in detail why her [REDACTED] [REDACTED] (Ex. 1 to Reed-Arthurs Decl., ¶¶44-155; Ex. 2 to Reed-Arthurs Decl., ¶9-15.) However, it is both economically rational and expected that neither Microsoft, nor the computer manufacturers, [REDACTED] [REDACTED] [REDACTED] (Ex. 1 to Reed-Arthurs Decl., ¶¶156-162; Ex. 2 to Reed-Arthurs Decl., ¶9-15.) Tellingly, Dr. Allenby, Microsoft's own survey expert, specifically stated that such [REDACTED] [REDACTED] (Ex. 27 to Olin Decl., p. 4.) The experts merely disagree on how best to account for these factors, which goes to weight, not admissibility. *See TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006, 1026 (N.D. Cal. 2013) (finding experts' disagreement on the best way to calculate WTP to be "a classic example of the 'battle of the experts' for the jury to decide); *W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*, No. CV 11-515-LPS-CJB, 2015 WL 12806483, at *10 (D. Del. Apr. 21, 2015), *report and recommendation adopted*, No. CV 11-515-LPS-CJB, 2015 WL 3622897 (D. Del. June 9, 2015) (finding that disagreement between experts is a "dispute goes to the weight of the testimony and may be properly dealt with on cross-examination"); *B–K Lighting, Inc. v. Fresno Valves & Castings, Inc.*, 375 Fed. Appx. 28, 32 (Fed. Cir. 2010) ("This conflict in expert declarations ... created a genuine issue of material fact that made summary judgment inappropriate"); *Transcenic, Inc. v. Google, Inc.*, C.A. No. 11–582–LPS, 2014 WL 7275835, at *2 (D. Del. Dec. 22, 2014) (motions presenting a "battle of the experts" were not amenable to summary judgment) (citations omitted).

*Second*, Microsoft's critiques of the conclusions of Dr. Reed-Arthurs' [REDACTED] at most amount to arguments going to weight, not admissibility. *See Liquid Dynamics Corp v. Vaughan*

*Co., Inc.*, 449 F.3d 1209, 1221 (Fed. Cir. 2006) (holding that, in a *Daubert* analysis, "the focus of

a court's inquiry into the relevance and reliability of scientific evidence 'must be solely on

principles and methodology, not on the conclusions that they generate.'") (quoting *Daubert v.*

*Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993))*; Clicks Billiards, Inc. v. Sixshooters, Inc.*,

251 F.3d 1252, 1263 (9th Cir. 2001) (holding that "critique of conclusions … go to the weight of

the survey rather than its admissibility"); *U.S. v. Bonds*, 12 F.3d 540, 561–563 (6th Cir. 1993)

("Disputes about specific techniques used or the accuracy of the results generated go to the

weight, not the admissibility of the scientific evidence."); *AHP Subsidiary Holding Co. v. Stuart*

*Hale Co.*, 1 F.3d 611, 618 (7th Cir. 1993) ("any shortcomings in the survey results go to the

proper weight of the survey and should be evaluated by the trier of fact"); *Messick v. Novartis*

*Pharms. Corp.*, 747 F.3d 1193, 1199 (9th Cir. 2014) ("[I]ssues regarding the correctness of his

opinion, as opposed to its relevancy and reliability, are a matter of weight, not admissibility.").

Indeed, courts have rejected similar attempts to exclude expert testimony based on

████████████████████████████████████ *See Apple, Inc. v. Samsung Elecs. Co.*

*Ltd.*, No. 12-CV-00630-LHK, 2014 WL 794328, at *15 (N.D. Cal. Feb. 25, 2014) (rejecting

motion to exclude based on comparing WTP calculations for features of a phone to the price and

a phone itself in part based on testimony that "the willingness to pay for individual features is not

strictly additive because correlation between participant's valuation of individual features and

varying price sensitivity outside of the modeled conjoint price range may result in the aggregate

willingness to pay to be either higher or lower than the sum of the willingness to pay estimates

for the individual features."); *see also TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d

1006, 1025 (N.D. Cal. 2013) (denying *Daubert* motion to exclude damages expert despite

argument that expert's WTP results "are 'absurd' because $133.11 is the total value for only six

of the 18 possible features chosen for inclusion in the study, and a fully-featured Blu-ray player can cost as little as $150.").

### 3. Dr. Reed-Arthurs Provided Ample Justification for ████████ ████████████████████

Microsoft falsely claims that "Dr. Reed-Arthurs ████████████████████ ████████ … [that] has no basis in science or the facts of this case." (Motion, 28). Yet Dr. Reed-Arthurs explained in detail the basis for the ████████████████████ ████ Specifically, the evidence demonstrates that Microsoft only captures ████████ ████████████████████████████████████ ████████████████████████████████ ████████████████████ (Ex. 1 to Reed-Arthurs Decl., ¶¶ 159-160; Ex. 2 to Reed-Arthurs Decl., ¶¶ 11-15.) Therefore, Dr. Reed-Arthurs determined that in the context of the hypothetical negotiation between the parties, "it would be reasonable and appropriate ████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████ (*Id*. ¶ 161.)



The economic literature also supports Dr. Reed-Arthurs' methodology. (*See* Ex. 28 to Olin Decl., pp. 27-28 ("Where possible, [Choice Based Conjoint] CBC results should be tested against and calibrated to consumer behavior in real markets. In some cases, CBC menus will coincide with product offerings in existing markets, or can be designed to include such products. In this case, it is useful to compare models estimated from the CBC study and the market data to assess whether people are weighing attributes similarly. Calibration is not limited to specific targeted products or policies; it may in fact be helpful to test or impose consistency in stated preference data across disparate choice situations when consistency is expected from rational consumers.").

Microsoft appears to advocate for a formulaic approach to damages calculations that does not exist. As this Court has recognized, apportionment is not limited "to specific methodologies because 'flexibility is required to determine fact-dependent damages.'" *Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*, No. 15-152- RGA, 2018 WL 4691047, at *7 (D. Del. Sept. 28, 2018) (citing *Ericsson*, 773 F.3d at 1226-27; *see also Guardant Health, Inc. v. Found. Med., Inc.*, No. CV 17-1616-LPS-CJB, 2020 WL 6742965, at *6 (D. Del. Nov. 17, 2020) (denying *Daubert* challenge to Microsoft's expert, Dr. Becker, noting that courts "'have never required absolute precision in [applying the principles of apportionment]; on the contrary, it is well-understood that this process may involve some degree of approximation and uncertainty.'") (quoting *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1328 (Fed. Cir. 2014)). Moreover, the mere fact that a damages methodology has not been "peer-reviewed or published does not necessitate its exclusion." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1298 (Fed. Cir. 2015) (affirming damages opinion and recognizing that "[p]ublication ... is not a *sine qua non* of admissibility," and "in some instances well-grounded but innovative theories will not have been published") (*citing Daubert*, 509 U.S. at 593).

In addition, experts are free to base their opinions on their expertise, knowledge, and experience. *See Kilbride Invs. Ltd. v. Cushman & Wakefield of Pa., Inc.*, No. 13-5195, 2018 WL 1960826, at *9 (E.D. Pa. Apr. 26, 2018) ("That Hughes based his conclusions in part on his own experience in the appraisal industry is not a basis upon which to exclude his testimony."); *Integra Lifescis. Corp. v. HyperBranch Med. Tech., Inc.*, No. 15-819-LPS-CJB, 2018 WL 1785033, at *6 (D. Del. Apr. 4, 2018) (rejecting plaintiff's argument that an expert's opinion should be excluded because it was based on his own experience, where the expert "provided some explanation in his expert report as to why he came to this conclusion based on his personal experience"); *VS Techs., LLC v. Twitter, Inc.*, No. 2:11cv43, 2011 WL 4744572, at *6-8 (E.D. Va. Oct. 5, 2011)

(concluding that the expert's testimony rested upon a sufficient factual basis to support his conclusion where he "bases his opinion upon his experience as applied to the facts of the case"); *Pers. Audio, LLC v. Google LLC*, No. CV 17-1751-CFC-CJB, 2021 WL 5038740, at *4 (D. Del. Oct. 25, 2021) (denying motion to exclude expert who relied on his decades of prior experience in drawing conclusions in his report).

As set forth above, Dr. Reed-Arthurs has established a clear basis for her use of the ████████ based on her experience. At most, Microsoft's attacks against Dr. Reed-Arthurs' adjustment go to weight, not admissibility. *See Vanzant v. Hill's Pet Nutrition Inc.*, No. 17 C 2535, 2023 WL 6976988, at *6 (N.D. Ill. Oct. 23, 2023) ("Plaintiffs have shown that Reed-Arthurs has a sufficient basis to support her Survey and opinions. Accordingly, the issues Defendants raise go to the weight, rather than the admissibility, of Dr. Reed-Arthurs' Survey and related testimony."). Even assuming, *arguendo,* that the Court agrees with Microsoft's criticism of Dr. Reed-Arthurs' ████████ (which it should not), that factor alone does not warrant excluding the results of her ████ *See Sentius Int'l, LLC v. Microsoft Corp.*, No. 5:13-CV-00825-PSG, 2015 WL 331939, at *6 (N.D. Cal. Jan. 23, 2015) ("Although the court agrees with Microsoft that there are reasons to conclude that Wecker's use of a calibration factor may be flawed, it will not exclude the survey on this basis.").



4.    **Microsoft's Attorney Criticism of Dr. Reed-Arthurs' Inclusion of ████████████████████████ Lacks Merit**

Microsoft appears to incorrectly imply that, because the ████████████████ ████████████████████████████████████████████ (Motion, 29-30), Dr. Reed-Arthurs' estimates of the relative value of ████████████████████ ████████████████ But Dr. Reed-Arthurs' estimates of the relative value of ████████████ are derived from the full sample. This can be seen in columns 'b' and 'd' in Exhibit 9a of Dr.

Reed-Arthurs' opening report, showing ████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████ (Ex. 1 to Reed-Arthurs Decl., ¶ 141;

Exhibit 9a).

Microsoft's argument also fundamentally misunderstands how ████████████

███████████████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████

This is readily apparent from the cognitive interview notes included in Dr. Reed-Arthurs' opening

report. (Ex. 1 to Reed-Arthurs Decl., Attachment D.) For example, one respondent, ██████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████ (*Id.*).

Moreover, Microsoft fails to cite any expert testimony in support of its ███████████

██████ critique. Microsoft's attorney argument alone cannot sustain a *Daubert* challenge. *See*

*Ecolab, Inc. v. Amerikem Labs, Inc.*, 98 F. Supp. 2d 569, 578-579 (D.N.J. 2000), *vacated and*

*remanded sub nom. on other grounds*, 264 F.3d 1358 (Fed. Cir. 2001) (holding that the court

would not deem the plaintiff's expert's test unreliable "based purely on surmise and attorney

argument"); *Continental Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1265 (Fed. Cir.

1991) (noting that attorney's advocacy may not substitute for evidence); *Braun v. Lorillard Inc.*,

84 F.3d 230, 234-35 (7th Cir. 1996) (noting the impropriety of using a methodology suggested by

lawyers).

**D.** **Microsoft Never Met its Burden Under the Marking Statute**

Microsoft claims that it is entitled to summary judgment that IPA cannot recover any damages for pre-suit infringement because IPA allegedly failed to prove marking or adequate notice of infringement. (Motion, 30.) As set forth in IPA's co-pending motion for summary judgment, and incorporated herein by reference, Microsoft defaulted on its *Artic Cat* burden of production by failing to identify specific products it contends are capable of marking but were not marked. This fact forecloses Microsoft's attempt to limit pre-suit damages as a matter of law. (D.I. 237, 21-26.)

**E.** **IPA Will Not Continue to Pursue its Doctrine of Equivalents Allegations**

While IPA does not agree that its doctrine of equivalents allegations are deficient or foreclosed by estoppel, IPA elects not to further pursue these allegations in this case and will limit its direct infringement case to literal infringement only.

**F.** **IPA's Indirect Infringement Allegations Are Supported By Sufficient Evidence**

**1.** **IPA Has Set Forth Evidence Showing Microsoft Induced Infringement**

Microsoft asserts that IPA cannot show direct infringement as a matter of law, based on the same theory IPA refutes in Section D above. IPA incorporates its rebuttal herein by reference. Microsoft then claims IPA has no evidence showing Microsoft had pre-suit knowledge of the Asserted Patents and no evidence showing Microsoft was willfully blind to the infringement. IPA has sufficient evidence for both these elements, such that the question of whether Microsoft induced infringement should proceed to the jury.

A defendant is liable for induced infringement under § 271(b) if the defendant took certain affirmative acts to bring about the commission by others of acts of infringement and knew that the induced acts constituted patent infringement. *See Roche Diagnostics Corp. v. Meso Scale*

*Diagnostics, LLC*, 30 F.4th 1109, 1117-18 (Fed. Cir. 2022). Microsoft does not dispute the "affirmative acts" element. The "knowledge of infringement" element can be established by a finding of knowledge of the patents and that the defendant was willfully blind to possible infringement. *See TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1286-87 (Fed. Cir. 2020).

With respect to knowledge of the patents, Microsoft does not dispute that it cited to the Asserted Patents during the prosecution of several of its own patent applications. (*See, e.g.,* Ex. 3 to Olin Decl., pp. 112-114). But Microsoft argues that these citations are insufficient to prove knowledge of the patents, citing *DermaFocus LLC v. Ulthera, Inc.*, 201 F. Supp. 3d 465, 471 (D. Del. 2016). In the *DermaFocus* case, however, the individual who submitted the patent application was not associated with the defendant at the time of submission, so the court could not impute knowledge of the patent to the defendant. *Id.* Here, on the other hand, the inventors listed on the Microsoft patent application were Microsoft employees at the time they submitted the application and Microsoft is listed in the Application Data Sheet as the assignee. (*Id.*, pp. 259-261.)

Furthermore, since *DermaFocus* was decided, courts have found that citing a patent-in-suit during prosecution of a defendant's own patent applications provides sufficient evidence of knowledge of the patent-in-suit. *See, e.g., Lytone Enterprise, Inc. v. Agrofresh Solutions, Inc.*, No. 20-678-LPS, 2021 WL 534868, at *3 (D. Del. Feb. 12, 2021), *report and recommendation adopted*, 2021 WL 1153002 (D. Del. Mar. 26, 2021) ("By listing the '185 patent in the IDS, AgroFresh represented that it was aware of the '185 patent and believed it to be material to the patentability analysis for its own application."); *Longhorn Vaccines & Diagnostics, LLC v. Spectrum Solutions LLC*, 564 F. Supp. 3d 1126, 1141 (D. Utah 2021) ("The April 2018 IDS cites four of the Asserted Patents . . . Because Spectrum appears to be the applicant who submitted the IDS, it is reasonable to infer, at least at this stage of the case, that it was sufficiently connected to

the IDS to have knowledge of what it contained."). Therefore, Microsoft's citation to the '115 Patent during prosecution of its own application in 2009 is sufficient evidence to show Microsoft knew of the '115 Patent at the time it induced infringement.

IPA can also prove Microsoft was willfully blind to its likely infringement. Microsoft knew (at least based on the disclosures on the face of the '115 Patent, which it cited in its own patent application) that the Asserted Patents were assigned to SRI International, the company that spun off Siri, Inc., and that one of the inventors of the Asserted Patents, Adam Cheyer, was a co-founder of Siri, Inc. and developed the Siri technology. █████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████ (*See, e.g.*, Exs. 1 and 7 to Olin Decl.)

Finally, Microsoft cites to a sentence in IPA's infringement contentions (Exh. L to Mahoney Decl., 3) it claims is unsupported by evidence ("Microsoft instructs and encourages end users to use the infringing products."). (Motion, 36 n. 16.) Microsoft fails to acknowledge the portions of Mr. Kennedy's report that set forth and analyze this very evidence. (Ex. 1 to Kennedy Decl., ¶¶ 64-66; 69-70; 120; 123; Ex. 2 to Kennedy Decl., ¶¶ 51; 53-57; Ex. 3 to Kennedy Decl., ¶ 79.)

### 2. IPA Has Set Forth Evidence Showing Microsoft Contributed to Infringement

IPA also presented sufficient evidence showing that, by supplying the Cortana software to third parties, Microsoft contributes to the infringement of the Asserted Patents. (Ex. 1 to Medvidovic Decl., ¶¶ 632-635.)

First, Microsoft is incorrect that licensing software "does not constitute the sale or offer to sell of a component, material or apparatus for purpose of contributory infringement." (Motion, 38.) In *In re Kollar*, the Federal Circuit found that a commercial transaction arranged as a license

of a product or device may be tantamount to a sale because the product is transferred to the licensee as if it were sold. 286 F.3d 1326, 1330-31 (Fed. Cir. 2002). On the other hand, the *PharmaStem* and *Nuance* cases Microsoft cites are inapplicable because they relate to the defendants' provision of a service, not the transfer of a product, such as the Cortana software. *See PharmaStem Therapeutics, Inc. v. Viacell, Inc.*, 491 F.3d 1342, 1357 (Fed. Cir. 2007) (finding no contributory infringement liability where the activity amounts to providing a service); *Nuance Comms. Inc. v. Tellme Networks Inc.*, 707 F. Supp. 2d 472, 487 (D. Del. 2010) (distinguishing the case from *Kollar* and finding the provision a service brings the case within the ambit of *PharmaStem*). IPA's contributory infringement allegations based on licensing are legally sound.

Next, Microsoft claims that "IPA's infringement expert does not read any claim element of the asserted claims on Windows 10 or cite any Windows 10 code in his report, but instead reads the claims only on certain versions of Microsoft's server-based Cortana software." (Motion, 38.) Once again, as discussed in Section D, Microsoft is willfully misconstruing IPA's infringement theories.

Finally, Microsoft's statement that "IPA has no evidence[] that Microsoft knew about the asserted patents, knew that the accused Cortana architectures might infringe, or was willfully blind to either possibility" (Motion, 39) is contradicted by the evidence presented in Section H.

### G.    IPA's Willfulness Allegations are Supported By Sufficient Evidence

IPA incorporates herein by reference its arguments relating to Microsoft's knowledge of the Asserted Patents and its likely infringement, as well as Microsoft's willful blindness with respect to its infringement. (Section H.) And IPA is not, as Microsoft alleges, relying on the citation of the '115 Patent in Microsoft's own patent application as the sole evidence of deliberate/intentional infringement. (Motion, 40.) Instead, as explained in Dr. Medvidovic's report and noted above,

██████████████████████████████████████

███████ (Ex. 1 to Medvidovic Decl., ¶¶ 636-642.) This is sufficient evidence to defeat a summary judgment motion. *See, e.g. Abbott Diabetes Care Inc. v. DexCom, Inc.*, Case No. 21-cv-977-KAJ (D. Del.) (D.I. 490, Aug. 23, 2023) (denying summary judgment of no willful infringement where the plaintiff provided evidence that the defendant had knowledge of the patents-in-suit and closely followed and copied the related technology).

To the extent the Court agrees with Microsoft that Dr. Medvidovic is not entitled to opine on Microsoft's state of mind or the ultimate issue of willfulness, the Court should also find that Microsoft's expert, Dr. Sycara, is not entitled to opine on the state of mind of the inventors, other SRI employees, or the ultimate issue of inventorship, as argued in IPA's summary judgment motion (D.I. 237, Sec. IV.B.)

## III. CONCLUSION

IPA and its experts have adduced sufficient evidence and engaged in appropriate analyses to show Microsoft's infringement and the proper calculation of damages for such infringement. Microsoft has failed to identify any issue suitable for summary judgment and failed to establish any viable reasons to exclude IPA's experts' opinions under *Daubert*. The Court should therefore permit the jury to hear all of the competing expert testimony to decide whether Microsoft infringes and the amount of appropriate damages upon an infringement finding. Microsoft's Motion should be denied in its entirety.

Dated: December 15, 2023

BAYARD, P.A.

*Of Counsel*:

*/s/ Stephen B. Brauerman*
Stephen B. Brauerman (#4952)
600 North King Street, Suite 400
Wilmington, DE 19801
(302) 655-5000
sbrauerman@bayardlaw.com

Paul J. Skiermont
Jaime K. Olin
Steven W. Hartsell
Kevin P. Potere
Todd A. Martin
SKIERMONT DERBY LLP
1601 Elm Street, Suite 4400
Dallas, TX 75201
(214) 978-6600
pskiermont@skiermontderby.com
jolin@skiermontderby.com
shartsell@skiermontderby.com
kpotere@skiermontderby.com
tmartin@skiermontderby.com

*Attorneys for Plaintiff,*
*IPA Technologies Inc.*

Mieke K. Malmberg
SKIERMONT DERBY LLP
633 West 5th Street, Suite 5800
Los Angeles, CA 90071
(213) 788-4500
mmalmberg@skiermontderby.com