IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IPA TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> MICROSOFT CORPORATION, <br><br> Defendant. | Civil Action No. 18-1-RGA |

MEMORANDUM ORDER

Before me is Defendant's motion for reconsideration (D.I. 347) of the denial of Defendant's motion for summary judgment on the issue of damages and the denial of Defendant's motion to exclude the testimony of Mr. Kennedy, one of Plaintiff's damages experts (*See* D.I. 342; D.I. 341 at 37–42). I have considered the parties' briefing. (D.I. 348, D.I. 350). For the reasons set forth below, this motion is DENIED.

I. **LEGAL STANDARD**

Motions to reconsider are disfavored. *See* D. Del. LR 7.1.5(a) ("Motions for reargument shall be sparingly granted."); *Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 42 F. Supp. 2d 385, 419 (D. Del. 1999). "The purpose of a motion for reconsideration . . . is to correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citation omitted). "A proper Rule 59(e) motion . . . must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010). "A motion for reargument/reconsideration is not appropriate

to reargue issues that the court has already considered and decided." *Justice v. Att'y Gen. of Del.*, 2019 WL 927351, at *2 (D. Del. Feb. 26, 2019).

## II. DISCUSSION

Defendant does not argue that there has been a change in controlling law, or that new evidence is available. (*See generally* D.I. 348). I therefore only consider the final prong—whether reconsideration would correct a legal or factual error. I conclude Defendant has failed to show that reconsideration is needed.

### A. Reasonable Royalty Based on Windows 10

Defendant contends that I erred by declining to exclude Plaintiff's damages theory and Mr. Kennedy's testimony. In particular, Defendant argues that Federal Circuit precedent prohibits a patentee from seeking reasonable royalty damages based on sales of a non-infringing product. (*Id.* at 2–3).

Defendant relies on the *AstraZeneca* line of cases that recite the foundational principle, "The royalty base for reasonable royalty damages cannot include activities that do not constitute patent infringement, as patent damages are limited to those 'adequate to compensate for the infringement.'" *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1343 (Fed. Cir. 2015) (quoting 35 U.S.C. § 284); *see also Brumfield v. IBG LLC*, 97 F. 4th 854, 876–77 (Fed. Cir. 2024); *Enplas Display Device Corp. v. Seoul Semiconductor Co.*, 909 F.3d 398, 411 (Fed. Cir. 2018). None of the cited cases support Plaintiff's overbroad interpretation that this principle prohibits a damages theory from including consideration of any non-infringing product. *Brumfield* instead supports the opposite conclusion:

> [The] principles [from *AstraZeneca* and related cases] point to a minimum requirement for a patentee seeking reasonable-royalty damages based on foreign conduct that is not independently infringing. Under the foregoing principles, the hypothetical negotiation must turn on the amount the hypothetical infringer would

2

> agree to pay to be permitted to engage in the domestic acts constituting "the infringement." 35 U.S.C. § 284. If the patentee seeks to increase that amount by pointing to foreign conduct that is not itself infringing, the patentee must, at the least, show why that foreign conduct increases the value of the domestic infringement itself—because, e.g., the domestic infringement enables and is needed to enable otherwise-unavailable profits from conduct abroad—while respecting the apportionment limit that excludes values beyond that of practicing the patent.

*Brumfield*, 97 F.4th at 877. *Brumfield* makes clear that no categorical bar exists prohibiting consideration of non-infringing activities. The Federal Circuit instead suggests the correct approach to applying *AstraZeneca* involves examining the relationship between the non-infringing and infringing activities.[1] It further provides an example of one sufficient relationship that permits consideration of non-infringing activities: when the infringing activity "enables and is needed to enable otherwise-unavailable profits" from the non-infringing activity. *Id.*

Following the Federal Circuit's guidance, I disagree with Defendant's contention that uses of Windows 10 client devices, at least with regard to uses of the embedded Cortana interface, "are activities that do not constitute patent infringement and cannot serve as the base for reasonable royalty damages as a matter of law." (D.I. 348 at 3 (emphasis omitted)). Defendant's assertion ignores the nature of the accused technology. It is undisputed that the only way users can access Cortana, and thereby trigger the accused server code to run, is through Windows 10. (D.I. 341 at 3, 39). As Plaintiff explained, "Cortana servers are . . . a fully

---

[1] The concept that non-infringing products can be relevant, when they are sufficiently related to an infringing product, is also present in other aspects of patent damages law. *See, e.g.*, *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 778 F.3d 1365, 1375 (Fed. Cir. 2015) ("A convoyed sale is a sale of a product that is not patented, but is sufficiently related to the patented product such that the patentee may recover lost profits for lost sales."), *cert. granted, judgment vacated sub nom. Medtronic Sofamor Danek USA, Inc. v. NuVasive, Inc.*, 577 U.S. 1099 (2016), and *opinion reinstated in part*, 824 F.3d 1344 (Fed. Cir. 2016); *IMX, Inc. v. Lendingtree, LLC*, 2005 WL 3465555, at *4 (D. Del. Dec. 14, 2005) (requiring marking of a website deemed to be intrinsic to the patented system, based on the nature of the website's relationship to the system it provides access, even though the website itself did not infringe the claims).

embedded feature of Windows 10, as Cortana servers can only be accessed by Windows 10 and can only serve Windows 10." (D.I. 350 at 3). Furthermore, Defendant benefits from the infringing server code by providing an interface for Cortana access in Windows 10 to boost sales of the operating system. (D.I. 341 at 39). The relationship between Windows 10 and the servers running the infringing code presents the type of situation contemplated by the example provided in *Brumfield*.[2]

The close relationship between Windows 10 client devices and Defendant's Cortana servers can be contrasted with the relationships in *Enplas* and in *AstraZeneca*. In *Enplas*, the Plaintiff's proposed freedom to operate payment covered all lenses manufactured by Defendant, including both infringing and non-accused lenses. 909 F.3d at 409–10. In *AstraZeneca*, the Plaintiff's damages theory included product sales from after the patent had expired. 782 F.3d at 1344. Both cases present functionally unrelated, non-overlapping products; the sale of the infringing product does not "enable[] and is [not] needed to enable otherwise-unavailable profits" resulting from the non-infringing product. *Brumfield*, 97 F.4th at 877.

Defendant has not convinced me that Plaintiff's proposed reasonable royalty rate, based on Windows 10 sales, captures more than the "'value of what was taken'—the value of the use of the patented technology." *AstraZeneca*, 782 F.3d at 1344 (quoting *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 770 (Fed. Cir. 2014)). I decline to reconsider my decision to deny summary judgment of Plaintiff's damages theory and exclusion of Mr. Kennedy's testimony.

---

[2] I note that, while it appears the Federal Circuit has not addressed the particular question at issue in this motion, Plaintiff is not the first to base its damages theory on sales of a non-infringing consumer product that triggers infringing server code. In *Virnetx, Inc. v. Cisco Sys., Inc.*, the Plaintiff accused the Apple servers that run its "FaceTime" feature on iOS devices and Mac computers of infringement. 767 F.3d 1308, 1314 (Fed. Cir. 2014). Despite the standalone iOS devices remaining unaccused in relation to the "Facetime" feature, Plaintiff relied on iOS device sales in formulating its damages theory. *Id.* at 1331.

4

### B. Apportionment

Defendant argues that my conclusion that Plaintiff's damages theory properly apportioned patented features from unpatented features was in error. (D.I. 348 at 4–5). In support of its contention, Defendant reiterates its argument that Windows 10 cannot serve as the basis of Plaintiff's damages theory because the operating system, by itself, does not infringe the asserted claims. (*See id.*). Pursuant to my rationale above, I decline to reconsider this issue.

### III. CONCLUSION

For the foregoing reasons, Defendant's motion for reconsideration (D.I. 347) is denied.

IT IS SO ORDERED.

Entered this 2nd day of May, 2024

/s/ Richard G. Andrews
United States District Judge

5